DORÉ, Judge.
This is a suit by Albert Jesse Stone, plaintiff, against his insurer, Commercial Fire & Casualty Company, to recover damages to his Packard automobile resulting from the wreck of said automobile on May 29, 1949. It is. shown that under the policy of insurance issued to plaintiff by defendant the plaintiff is entitled to recover of the defendant the actual amount of damages sustained 'by his car in a wreck or collision less the sum of $100.00 which is deductible. Plaintiff alleges that as a result of the wreck his car was damaged to the extent of $1500.-00 and that he is therefore entitled to the sum of $1400.00 to cover said total damage less the $100.00 deductible. He further alleges that since the defendant failed to settle the claim within sixty days of the submission of proof, or to take steps to have appraisers and an umpire appointed under the terms of the policy to determine the actual damage, within said sixty day period, he is further entitled to a statutory penalty of 25% of $1400.00 or $350.00, and a reasonable attorney’s fee of $500.00 together with legal interest from judicial demand and all costs.
Chessher Motors of Louisiana intervened in the suit praying for recognition of an act of assignment executed in its favor by plaintiff in the sum of $750.00 to be paid by preference and priority out of any judgment rendered against defendant, and further praying for the sum of $250.00 as a reasonable attorney’s fee for filing and prosecuting the intervention.
Defendant first filed a plea of prematurity, which was duly heard and properly overruled.
Defendant then answered admitting the existence of the policy and the occurrence of the wreck or collision on Sunday, May 29, 1949. In its answer the defendant avers that the plaintiff disposed of his wrecked automobile just two days after the wreck, and thereby deprived the defendant of the privilege under the terms of the policy to have the car repaired and put back in its original condition which it claims it could have had done for the sum of $751.74. It admits liability in the amount of $651.74, being the above sum less the $100.00 deductible, and it deposited in the registry of the court this amount plus the accrued court costs.
After trial of the case on the merits, the District Court, without favoring us with written reasons therefor, rendered judgment in favor of plaintiff for $1050.00 with recognition of intervenor’s assignment, and with legal interest from judicial demand, and all costs.
From this judgment the defendant perfected a suspensive appeal, and plaintiff answered the appeal praying that the judgment be increased to $2250.00.
At the outset it may be noted that the amount prayed for in the answer to the appeal is above the jurisdictional amount of this court. However, that demand can be considered waived by the fact that in his brief plaintiff prays for a total award of $1701.56.
It may be further noted that the plea of prematurity is not urged before this court, and can therefore be considered abandoned.
The sole question before this court are questions of fact; to-wit:
1. Could the defendant have had repaired the plaintiff’s automobile for the sum of $751.74, as averred by it in its answer P
2. If so, was the defendant deprived of the privilege of putting t'he car back in its original condition?
3. If not, what further indemnification is the plaintiff entitled to over and above the amount deposited in the registry of the court, to cover the actual damage to his automobile less the $100.00 deductible?
*329 4. Under the facts of the case is the plaintiff entitled to statutory penalities and to an attorney’s fee and is the intervenor entitled to an attorney’s fee?
It seems proper to dispose of the last question at the outset of the consideration of the merits. The evidence shows that there were considerable negotiations between the plaintiff and agents of the defendant prior to the filing of the suit and that there was never any arbitrary refusal on the part of defendant to pay over to plaintiff the amount that could be agreed upon as due the plaintiff. Under the terms of the policy both the plaintiff and defendant had the right, in the event they could not agree on the amount of the damage, to ask for the appointment of two appraisers and an umpire to determine the amount of damage, one appraiser to be appointed by plaintiff, and one by the defendant, and the umpire to be appointed by the appraisers.
 Neither the plaintiff nor the defendant, exercised said option within the sixty (60) days period after submission of proof of loss and it is therefore reasonable to say that they thereby tacitly waived their rights under that particular provision of the policy and agreed that it could be submitted to the court for adjudication. ’Certainly if the question had been submitted to appraisers and an umpire they would not have been bound by the low bid urged by the defendant unless they found that such low bid would in reality remedy the damage caused to plaintiff, and the court assumes the same position in passing upon this claim. Under these facts since there was no arbitrary action on the part of defendant, established by clear cut proof, we can see no merit to the claims for penalities and attorney’s fees.
As to the first question, whether or not defendant could have had the plaintiff’s car repaired for $751.74, the evidence shows that a- bid for that sum was obtained by defendant from Cagle Motors (Chrysler dealer) ; but it appears that such bid was obtained for the purpose of negotiating a settlement, and that' no binding agreement was ever made with the bidder whereby they would have repaired the car for that sum with the guarantee that it would be in the same or similar condition as before the wreck, and within a reasonable time. The defendant in his brief states that “It appears from an exhaustive search that this question (the question of disposing of the automobile' before defendant had an opportunity to repair it) is hovel to the jurisprudence of this state. Accordingly we must look to other authorities and the jurisprudence of our sister states for assistance in this matter” and cites in support of his contention, excerpts from Blashfield’s Cyclopedia of Automobile Law and Practice, Appleman on Insurance Law and Practice, and the cases of Haussler v. Indemnity Co. of America, 227 Ill.App. 504, and the case of Home Mutual Insurance Company of Iowa v. Stewart, 105 Colo. 516, 100 P.2d, 159; but all these citations presupposes that the automobile in question could and would be repaired and put in the same condition as it was before the collision. It is stated in Blashfield’s Cyclopedia of Automobile Law and Practice, Vol. 6, Section 3791, “Extent of Liability, 'Collision” as follows:
“The restoration may or may not be accomplished by repair or replacement of broken or damaged parts, but these cannot be said to be a complete restoration of the property satisfying the inténtion of the policy except where there is no diminution of value between the car as it was before the injury as-it is in its restored or repaired condition.
“An automobile collision policy insuring against actual loss or damage to the automobile covers the element of depreciation as an item of recovery in case of a loss within the terms of the policy.”
There is no satisfactory proof that Cagle Motors could or would.have repaired the car to that condition that, the damage would have been completely obliterated, including the depreciation. It is our conclusion from the evidence that it has not been proved that the defendant could have had the car repaired to its original condition for the sum of $751.74.
*330 As to whether or not the defendant was denied the privilege of having the car repaired to its original condition because of its disposition by the plaintiff within two days after the wreck, the evidence is not clear cut, but it is our opinion that the evidence shows that the car was traded in on a new car only after the plaintiff discovered that it could not be restored to its original condition, and that the work, including the securing of parts, would entail an indefinite period of time. As it was necessary for him to have an efficient automobile to perform his duties as Federal Revenue Agent, it was not unreasonable on his part for him to avoid the indefinite delay and uncertainty by trading the wrecked car on a new one, especially when he asked the insurance company’s adjuster if he could trade for a new car and the adjuster said: “It was perfectly all right, they had all the bids they wanted.”
We now come to the question as to whether or not the plaintiff is entitled to indemnification above the amount of $651.74 deposited in the registry of the court, and the above discussion in effect answers the question in the affirmative, so that in the final analysis we must determine what amount would substantially, do justice in the premises. The trial judge arrived at the amount of $1050.00 but he does not explain how he did so. The record shows that there were two bids proved by the plaintiff, to-wit the bid of Chessher Motors in the sum of $1,396.04, and of Wilson Motor Company in the sum of $1,350.88. Another bid was placed in the record by plaintiff, to-wit that of Parello’s Garage in the sum of $1,401.64, but that bid was not proved. The defendant introduced and proved three bids, to-wit Ed Taussig in the amount of $904.28, Collard Garage in the amount of $770.00 and Cagle Motors in the amount of $751.74. We therefore have five, bids which can be considered in arriving at an equitable award for the damage sustained, as follows:
Chessher Motors.$1,396.04
Wilson Motor :Co. 1,350.88
Ed Taussig, Inc. 904.28
Collard Garage. 770.00
Cagle Motors . 751.74
The average of plaintiff’s two bids would ■be $1,373.46. The average of defendant’s three bids would be $808.67. The combined average of plaintiff’s and defendant’s bids would be $1090.13. The overall average of all five bids would be $1034.55.
The wide difference between the bids obtained by the plaintiff on the one hand, and those obtained by the defendant on the other, can be explained by the fact that several items included in plaintiff’s bids were not included in defendant’s bids, principally the item of changing the frame instead of straightening the frame. The latter item alone makes a difference of approximately $200.00. The purchaser of the wrecked Packard, Mr. Shotwell, prepared the bid for Chessher Motors, and stated that the bid called for a new frame, but for his own use the frame was not changed but was straightened. The record also contains other testimony to the effect that it was not necessary to put in a new frame. Apparently, the trial judge accepted the Wilson bid of $1350.88, as the most reasonable, and subtracted therefrom the amount of $200.00 called for a new frame and thereby arrived at the sum of $1150.00 (leaving out the pennies) to cover the damage, and by subtracting the $100.00 deductible arrived at the sum of $1050.00 for his award.
It may be noted that the plaintiff testifies “Well, it cost me $3100.00. I traded in a car for it. I paid $1800.00 difference in the car that I paid $1100.00 for and I just owned the car a short time.” His explanation of the cost seems to show that it was actually $2900.00 instead of $3100.00. Using that as a basis, we find that the life of the car was four years and therefore had a depreciation of $725.00 for the first year, and since the car was four months old at the time of the accident we figure that it had then depreciated in the amount of $241.-66. Deducting this depreciation from the cost we find that the car had a value of $2658.34 at the time of the accident. The record discloses that plaintiff received the amount of $1495.00 as a trade-in value on a new car after the accident, leaving a loss to him of $1163.34, Which amount less the $100.00 deductible leaves a net claim against the defendant for $1063.34. This amount *331 being only $13.34 more than the amount allowed by the trial court, in our opinion is insufficient to disturb the trial court judgment.
In view of the above reasons and considerations, the judgment below is affirmed.