McBRIDE, Judge.
On April 29, 1957, Antoine Dugas and his son, E. J. Dugas (a minor), purchased a new Ford Fairlane convertible automobile from Dutch O’Neal Motors, Inc. (hereinafter sometimes called “motors company”) for $3,900 (plus sale taxes), which transaction was financed through Securities Investment Company, Inc. (hereinafter called “finance company”), which became the assignee (from the motors company) of the purchasers’ vendor’s lien note secured by chattel mortgage on the automobile, the note being for the principal sum of $3,301.20, payable in 30 monthly installments of $110.04 each. The finance company demanded that the purchasers furnish certain insurance coverage on the vehicle which the finance company secured from Insurance Company of St. Louis for a premium of $256 paid for by Antoine and E. J. Dugas. Among other things, the policy insured the owners and the finance company against loss by the peril of collision.
Forty-six days later the car became involved in a collision, the nature thereof not being shown, and sustained severe damages. Ultimately the wreckage was taken to the garage of the motors company in New Orleans which, sometime in August, 1957, undertook to repair the vehicle for $2,058.02 and about six months later allegedly completed the job. Notwithstanding the damage to the car and the further fact that no insurance adjustment had been effected, Antoine and E. J. Dugas paid the first six monthly installments on the note, reducing the principal balance thereon to $2,640.96. However, their attorney then notified the finance company in writing that whereas no adjustment had been forthcoming for the loss under the policy, they did not intend to make any further payments. Their contention was that the collision had rendered the automobile a total loss.
On January 10, 1958 (after the repairs had been completed), the finance company sought executory process on its note and chattel mortgage for the reduced balance due, plus interest, attorney’s fees and costs, and pursuant to the order of seizure and sale issued by the Civil District Court for the Parish of Orleans, the Civil Sheriff seized the automobile and ultimately sold it at public sale whereat it was adjudicated to the finance company as the last and highest bidder for $1,875. Thereupon the insurance company delivered its check for $2,008.02 (the amount of the repairs) to the finance company which in turn endorsed and turned the check over to the motors company in satisfaction of the repair bill. On February 6, 1958, the finance company executed, on a form supplied by the insurance company, a receipt labeled “Hold Harmless Agreement” acknowledging the loss under the insurance policy to be $2,008.02 “which the (insurance) Company has this day paid to the obligor here *637 in.” Such settlement was made without the intervention, knowledge or consent of Antoine and E. J. Dugas, and no release was ever executed by them, nor has it been shown they ever acquiesced in or ratified the settlement between the insurer and the finance company.
This suit then ensued. Antoine Dugas by original and supplemental petitions appears as plaintiff in his own behalf and also on behalf of his minor son, E. J. Dugas, seeking to recover from the insurance company, the finance company, and the motors company judgment in solido for $3,972, such amount allegedly representing the purchase price of the automobile, $4,022, less $50. The insurer is sought to be held liable under the collision insuring clauses of the policy, it being alleged the automobile was wrecked beyond repair and was a total loss. The averment is made that the acts of the finance company and the motors company also rendered them liable for the amount of plaintiff’s claim.
The finance company and the motors company filed exceptions of no cause or right of action which were overruled. All defendants then answered. The insurer defends on the ground that there was no total loss, that the vehicle was susceptible to being repaired, and that with the consent and authority of the owners all necessary repairs had been satisfactorily made for which the insurer paid. The other two defendants deny that any acts on their part caused damage to plaintiff and his son and further set up that they are not insurers and cannot be held liable for plaintiff’s alleged loss.
After trial, judgment was rendered against the three defendants solidarily for $3,450, “the replacement value of the car.” In his reasons for judgment the trial judge commented: “The tragedy of errors, in this case, is such that it is impossible to unscramble the eggs.” Defendants have appealed.
Under the policy provisions, in consideration of the payment of the premium, etc., the insurer agreed with the insured (the policy names Securities Investment Company, E. J. Dugas, and Antoine Dugas as “Insured” to the extent “their interests may appear”) to pay for loss caused by collision to the owned automobile, less $50 deductible. The conditions of the policy limit the company’s liability for loss to the actual cash value of the automobile and stipulate that the company may pay for the loss in money or may repair or replace the damaged property.
Counsel in brief and in argument treat the policy as though it is one running in favor of the owners but containing what is generally referred to as a “loss payable” or an ordinary or open mortgage payable clause under which, in the event of a loss, a portion of the proceeds of the policy should be paid by the insurer to the mortgagee, as his interest might appear. Counsel are clearly mistaken as the policy is not of that type. The finance company, E. J. Dugas, and Antoine Dugas are all specifically named as “Insured” to the extent “their interests may appear.”
The focal point presented by the appeals for the court’s determination is the extent and measure of damages sustained by the vehicle as a result of the collision. The car was new when purchased by Dugas and his son on April 29, 1957, just forty-six days before the damages accrued, for $3,900. The trial judge thought the car was a complete loss and we think the evidence supports such a conclusion. The extent of the damages is eloquently attested to by the photograph in the record and the testimony of two automobile repairmen connected with Guidry’s Garage in Cut Off, Louisiana, to which the car was initially taken after the collision. Such evidence shows that there was a complete wrecking which placed the car beyond being sound enough to be feasibly repaired. Not alone that, but there is evidence in the record going to show that the insurance company had an adjuster look into the matter while the car was in Cut Off, and that this adjuster informed the Dugas family that the *638 car could be considered as being totally destroyed. The insurer never produced said adjuster as a witness in the case to rebut the testimony to that effect, and there is no evidence which countervails what this adjuster allegedly said. The proprietor of Guidry’s Garage thought the car so badly damaged he declined to give an estimate of the cost of repairs and informed the owners that if the wreck was allowed to remain in his establishment, he would have to charge them for storage. Thereupon young Dugas arranged for the towing of what was left of the vehicle to the motors company’s establishment in New Orleans. The only witnesses who testified as to the feasibility of repairs were the local adjuster for the insurance company and the body shop foreman of the motors company. The latter states he gave the former a written estimate of the cost thereof. However, it was conceded that a copy of the estimate in question was never furnished to the owners who were completely in the dark as to the details thereof.
The body shop foreman states young Dugas authorized the repair work but a significant observation should be made at this point. The custom of the motors company is to require written authority for major repair jobs, but the foreman had to admit he had no authority in writing in this case, and his testimony is that he acted upon verbal instructions emanating from the minor Dugas. Furthermore, even the adjuster and the foreman seem to admit the car came exceedingly close to being a complete loss. The adjuster said:
“It was not a total loss. The estimate was for $2058. and a few pennies. The salvage bid that we had was for $925.00 and the replacement cost was $3450.00 approximately so there was almost $475.00 difference between the total and a repair settlement.”
The foreman testified:
“Q. What about the retractable top ?
A. It was all right, otherwise the ■ car definitely would have been a total loss.
“Q. Is that the only thing, in your opinion, was the retractable top — A. Well, the body of the automobile, the retractable hard top was about the only thing that actually kept it from becoming a complete total loss.”
There is neither convincing nor satisfying proof which would warrant a conclusion the automobile could have been adequately repaired by replacement of damaged parts such as to restore it anywhere near its former condition, that is to say, its condition before injury. We think that under the policy provisions the insurance company was obligated to replace the insured property if it could not make such repairs and replacements as were proper to restore the car in appearance, usefulness, utility and durability to its condition prior to being damaged. See McMahon v. Manufacturers Casualty Insurance Company, 227 La. 777, 80 So.2d 405, which involved a claim against an insurance company under a collision policy. Thus, we hold there was a total loss and that what ineffectual repairs were attempted were undertaken without the authority of Antoine and E. J. Dugas, who throughout the period were contending that they should receive another and like car. Young Dugas even went so far as to propose that he would put up $400 in cash if a settlement was reached whereby he might receive a new automobile.
Had the finance company taken the proper position with the insurer, that fs, to insist upon settlement of the chattel mortgage on the basis of a total loss, its share of the policy proceeds as an insured would have been the reduced amount due on the Dugas note and mortgage and the obligation on the note and mortgage would have thereby been extinguished. But unfortunately for itself, the finance company was bold enough, without the concurrence of Antoine and E. J. Dugas, to accept $2,008.02 as its share of the loss for which it gave *639 the insurer full acquittance and discharge. Of course, being an insured to the extent of its insurable interest in the automobile, i. e., the amount due on the chattel mortgage, the finance company was perfectly within its rights in accepting any lesser amount it saw fit, but its action in accepting anything less than the full amount could not militate against nor affect the rights or claims of the owners of the vehicle. They, Antoine and E. J. Dugas, therefore have a claim against the insurer as for total loss of their insurable interest, i. e., the value of the vehicle immediately prior to injury, less the amount of the chattel mortgage they owed ($2,640.96) and the salvage value of the wrecked automobile and further a deductible of $50. Such method of ascertaining the insured’s loss follows the formula used in McMahon v. Manufacturers Casualty Insurance Company, supra.
The only estimate of replacement value of the car emanated from the insurance company’s local adjuster who arbitrarily testified the amount was $3,450, without stating his method of arriving at that figure or without supporting his estimate with facts or other figures. It seems to us unreasonable to suppose that the depreciation in just forty-six days amounted to $450, and we do not feel, in justice to Antoine and E. J. Dugas, that we should accept such a bald and unsupported estimate of value. The Supreme Court has adopted its own method of ascertaining depreciation on and the cash value of an automobile. Again see McMahon v. Manufacturers Casualty Insurance Company, supra; also, Stone v. Commercial Fire & Casualty Co., La.App., 50 So.2d 327. We shall employ such method.
The life expectancy of an automobile purchased new and subjected to ordinary use is that of four years. That being the basis of a car’s life expectancy, in each of the four years a car costing $3,900 would suffer a depreciation of $975 per year. The car in question was forty-six days old so the amount it had depreciated prior to the time of the collision would be 46/365ths of the first year’s depreciation or $123. Accordingly, its value after depreciation was $3,777. The salvage value of the car presents no problem as the insurance adjuster asked for and received a bid for $925 which we think would be a fair and reasonable salvage value. Therefore, the loss sustained by Antoine and E. J. Dugas for the purpose of fixing the insurer’s liability may be tabulated as follows:
Value oí car after depreciation.$3777.00
Less:
Amount due on chattel mortgage.$2640.96
Salvage value of car. 925.00
Deductible under policy provisions... 50.00 3615.96
Amount recoverable from insurer.$ 161.04
The premium on the policy amounted to $256. The policy term was from April 29, 1957, to October 29, 1959, and we think a refund of the unearned premium, which we calculate to be $243.11, is due Antoine and E. J. Dugas. This is recoverable by plaintiff from the insurer though not prayed for. The appellate court shall render any judgment which is just, legal and proper upon the record on appeal. LSA-C.C.P. art. 2164.
The trial court should have maintained the exception of no cause of action interposed by the motors company in that the petitions contain not one allegation of fact from which it can be deduced that any act of the motors company caused damage to Dugas and his son or added to or aggravated their loss, and the motors company should have been dismissed from the suit.
The exception of no cause of action filed by the finance company was correctly overruled. It seems to us this defendant is an indispensable party to this lawsuit. The suit looks to recovery by the owners and coinsureds of their undivided share of proceeds due on an insurance policy under which the mortgagee was also insured, and in these circumstances in which a conflict of interest could prevail plaintiff’s claim could not have been validly adjudicated unless the mortgagee was also present before the court.
*640 We have indicated above that Antoine and E. J. Dugas remained the owners of the automobile in its wrecked condition and deducted its salvage value from the amount for which the insurance company is liable to them. The car came into possession of the finance company by virtue of its acquisition at the Sheriff’s sale, which sale, incidentally, should never have taken place had the finance company insisted upon payment of its full loss from the insurer, which was its duty in view of the fact that it exacted that the insurance coverage be furnished and paid for by the owners of the car. The policy was designed not only for the protection of the finance company’s interest to the extent of its mortgage on the automobile, but was also intended to protect the owners against exposure to personal liability on their note in the event of damage to or the destruction of the automobile by collision. The record shows that after acquiring the car from the Sheriff the finance company made a private sale thereof to a third person, and there is no question that at the present time it would be impossible for the finance company to deliver the vehicle to Antoine and E. J. Dugas, an4 we are, therefore, constrained to hold it responsible to them for $925 which was the salvage value of the automobile. Plaintiff did not pray for this relief either, but again under LSA-C.C.P. art. 2164 we are privileged to grant it.
Therefore, the judgment appealed from must be recast. It is now ordered, adjudged and decreed that the judgment appealed from as written be set aside and that there now be judgment in favor of plaintiff in his own behalf and on behalf of his minor son and against Insurance Company of St. Louis for the full sum of $404.15, and that said plaintiff, in his own behalf and on behalf of his minor son, have judgment against Securities Investment Company, Inc., for the full sum of $925, both amounts to bear interest at the legal rate from judicial demand until paid, said defendants to pay all costs.
It is further ordered, adjudged and decreed that the exception of no cause of action filed by Dutch O’Neal Motors, Inc., be and the same is hereby sustained, and the suit as against that defendant is dismissed at plaintiff’s cost.
And as thus recast, the judgment is affirmed.
Insurance Company of St. Louis and Securities Investment Company, Inc., are to pay the costs of the appeals herein.
Judgment recast and affirmed.