822 So.2d 617 (2001)
Billy CAMPBELL, Individually and as Representative of all Persons Similarly Situated
v.
MARKEL AMERICAN INSURANCE COMPANY.
No. 2000 CA 1448.
Court of Appeal of Louisiana, First Circuit.
September 21, 2001.
*618 Jody E. Anderman, Jules B. LeBlanc, III, Baton Rouge, Vincent J. Sotile, Jr., Donaldsonville, Christopher A. Kesler, Bruce Kemp, Sylvia Davidow, Houston, TX, Counsel for Plaintiff/Appellee Billy Campbell.
Christine Lipsey, Michael P. Fruge', Baton Rouge, Counsel for Defendant/Appellant Markel American Insurance Company.
James L. Donovan, Jr., Metairie, Counsel Amicus National Association of Independent Insurers.
Before: GONZALES, KUHN, and CIACCIO[1], JJ.
KUHN, J.
The issue presented in this appeal is: Does a motorcycle collision policy, which provides that the insurer agrees to repair or replace the damaged motorcycle, obligate the insurer to compensate the insured for any diminution in market value that might remain after the insurer has paid for a quality repair job that restores the motorcycle *619 to its pre-accident physical, mechanical and cosmetic condition? The trial court found that the policy provides coverage for the motorcycle's diminished value. We disagree and reverse.

I. FACTUAL AND PROCEDURAL BACKGROUND
After Billy Campbell's motorcycle was damaged in an automobile accident, he filed a claim with his insurance company, Markel American Insurance Company (Markel). Pursuant to the provisions of a motorcycle insurance policy affording collision coverage, Campbell asked Markel to pay for the repairs to his motorcycle and to pay for its diminished value. Campbell sought to recover the difference between the pre-damage value of his motorcycle and its value after it had been fully and properly repaired. Markel paid for the repairs but denied Campbell's diminished value claim. As a result, Campbell filed this purported class action suit on behalf of himself and similarly-situated Markel insureds, who Campbell alleges did not receive compensation for their vehicles' diminished value after the vehicles were damaged in accidents. Campbell asserts that Markel's denial of the diminished value claims is a breach of its contract of insurance. Campbell does not claim that Markel failed to perform quality repair jobs on the vehicles in question. Rather, he contends that vehicles that have been damaged in an accident are, by the very nature of their damage and subsequent repair, worth less than similar vehicles that have not been damaged.
Markel responded with a motion for summary judgment claiming that its policy unambiguously limited its liability to the lesser of "the actual cash value of the [motor]cycle at the time of loss" or the "amount required to repair or replace" it. Markel asserted that this language gave it the option of paying its insured the value of the motorcycle or repairing the motorcycle. Campbell opposed the motion and filed a cross-motion for partial summary judgment on the issue of coverage. Campbell urged that a review of the entire policy establishes Markel's liability for diminished value claims. Alternatively, Campbell maintained that the language of the policy is ambiguous and should be liberally interpreted in favor of finding coverage. After a hearing on the motions and before addressing any class certification issues, the trial court signed a judgment on February 25, 2000, denying Markel's motion for summary judgment and granting Campbell's motion for partial summary judgment.[2] In its reasons for judgment, the trial court concluded that Markel's obligation to "repair" included the obligation to pay for the motorcycle's "diminished value." Stating that the word "repair" was drawn from La. C.C. art. 2315, the court found Markel was obligated to make the insured whole in the same manner that a tortfeasor would be obligated to make his victim whole in a tort context.
Pursuant to Markel's motion, the trial court signed an order that designated as final the judgment granting Campbell's cross-motion for partial summary judgment. The order also stated there was no just reason for delay. Thereafter, Markel suspensively appealed the trial court's February 25, 2000 judgment. Pursuant to La. C.C.P. art.1915, the portion of the trial court's judgment that granted Campbell's cross motion for partial summary judgment is appealable. But because the denial of a motion for summary judgment is *620 an interlocutory judgment, the portion of the judgment denying Markel's motion for summary judgment is not appealable. La. C.C.P. art. 1841; Davis v. Specialty Diving, Inc., 98-0458, p.5 (La.App. 1st Cir.4/1/99), 740 So.2d 666, 669, writ denied, 99-1852 (La.10/8/99), 750 So.2d 972. A court of appeal, however, has plenary power to exercise supervisory jurisdiction over trial courts and may do so at any time, according to the discretion of the court. See La. C.C.P. art. 2201. Supervisory jurisdiction may be exercised to reverse a trial court's denial of a motion for summary judgment, and to enter summary judgment in favor of the mover. Charlet v. Legislature of State of La., 97-0212, pp. 6-7 (La.App. 1st Cir.6/29/98), 713 So.2d 1199, 1202, writs denied, 98-2023, 98-2026 (La.11/13/98), 730 So.2d 934. Because our review of the trial court's grant of Campbell's motion will necessarily decide the coverage issue presented in Markel's motion, we reason that judicial efficiency and the interests of justice are best served by exercising our supervisory jurisdiction to review the denial of Markel's motion. Thus, we treat Markel's motion to appeal the court's denial of its motion for summary judgment as an application for supervisory writs.

II. ANALYSIS

A. Summary Judgment Law and Standard of Review
Summary judgment procedure is favored in Louisiana. La. C.C.P. art. 966(A)(2). A motion for summary judgment shall be granted when the mover can show "that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). When a contract is not ambiguous or does not lead to absurd consequences, it will be enforced as written and its interpretation is a question of law for a court to decide. Sanders v. Ashland Oil, Inc., 96-1751, pp. 6, 9-10 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1035, 1037, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Thus, when the parties agree that a valid contract binds them and that the material facts involved in the dispute are not contested, the contract's application to a case is a matter of law and summary judgment is appropriate. American Deposit Ins. Co. v. Myles, 2000-2457, p. 5 (La.4/25/2001), 783 So.2d 1282, 1286. In the present case, there are no material issues of fact that are disputed pertaining to the issue of coverage. We address only legal issues. When addressing legal issues, a reviewing court gives no special weight to the findings of the trial court. It conducts a de novo review of questions of law and renders a judgment on the record. Gaylord Container Corp. v. CNA Ins. Companies, XXXX-XXXX, p. 9 (La.App. 1st Cir.4/03/2001), 807 So.2d 864, 870.

B. Policy Language
The Markel policy provides in pertinent part:
V. DAMAGE TO YOUR MOTORCYCLE
Collision Coverage
We will pay for direct and accidental loss to any Insured Motorcycle ... caused by Collision.
. . .
Limit of Liability
We agree to pay the lesser of:
A. The actual cash value of the cycle at the time of loss, or if the loss is part of the cycle, the actual cash value of the part; or
B. The amount required to repair or replace the property at the time of loss with deduction for depreciation where it applies.

*621 C. Contentions of the Parties
Markel alleges that the trial court erred by treating this case as one sounding in tort. Markel maintains that the resolution of this case hinges on principles of contractual interpretation and that the terms of the policy clearly and expressly limit its obligation to pay only the costs incurred to physically repair the cycle. Markel does not dispute that diminished value is a "direct and accidental loss" under the terms of its policy. Markel asserts, however, that the terms of the policy dictate that its liability is expressly limited to the lesser of the "actual cash value of the cycle at the time of loss" or the amount required to "repair or replace" the cycle. Markel contends that this language provides it with the option of paying the pre-accident value of the motorcycle or the amount necessary to repair it; Markel maintains it does not have the dual obligation of paying for repairs and diminished value. Markel urges that the trial court has, in essence, rewritten the policy by finding coverage for the diminished value claim.
Campbell responded that the trial court construed the entire policy rather than focusing on a single provision of the policy and properly concluded that the policy included coverage for diminished value claims. Campbell asserts that the policy's coverage for "direct and accidental loss" encompasses the diminished value of his cycle and that nowhere in the policy does Markel expressly exclude coverage for diminished value claims. Campbell urges that the limitation of liability language cannot operate to limit the scope of coverage and to exclude diminished value as a covered loss.

D. Distinction between First-Party and Third-Party Claims
Our state's appellate courts have recognized that insurers may be held liable for the diminished value of automobiles in suits involving third-party claimsclaims brought against a tortfeasor's insurer by plaintiffs who sustained property damages. See Orillac v. Solomon, 33,701, pp. 5-6 (La.App.2d Cir.8/23/2000), 765 So.2d 1185, 1188-89; Smith v. Midland Risk Ins. Co., 29,793, pp. 5-6 (La.App.2d Cir.9/24/97), 699 So.2d 1192, 1196; Davies v. Automotive Casualty Ins., 26,112, pp. 5-6 (La.App.2d Cir.12/7/94), 647 So.2d 419, 422; Romco, Inc. v. Broussard, 528 So.2d 231, 234 (La. App. 3d Cir.), writ denied, 533 So.2d 356 (La.1988). The liability of the insurer in those instances was based on the policy's liability coverage. The policy language generally obligated the insurer to pay for bodily injury or property damage for which the insured was held responsible under tort principles of recovery, which dictate that the person or property is made whole.
The present case involves a first-party claim. Campbell is an insured seeking to recover under his policy's collision coverage rather than a party advancing a claim against a tortfeasor's insurer. We recognize that there are no reported cases in Louisiana holding that a first-party claimant is entitled to recover the diminished value of a vehicle in addition to repair costs under the terms of an insurance policy's collision coverage.[3] On the contrary, *622 the recent opinion of Townsend v. State Farm Mutual Automobile Ins. Co., 34,901 (La.App.2d Cir.8/22/2001), 793 So.2d 473, holds otherwise. In that case, our brethren of the second circuit addressed first-party claims raised in a class action suit. Based on the terms of a collision policy, an insured filed suit for breach of contract on behalf of himself and similarly-situated policyholders. Although the insurer had paid $4,000 to repair the named insured's vehicle, the insured sought to recover the diminished value of his vehicle. The policy language at issue provided that the insurer was obligated to pay for "loss to your car caused by collision ...." The policy defined "loss" as "each direct and accidental loss of or damage to" the insured's vehicle. The policy also included a limitation of liability provision that provided:
The limit of our liability for loss to property or any part of it is the lower of:
1. the actual cash value; or
2. the cost of repair or replacement.
The insured urged that the insurer's obligation to repair included the obligation to make the insured whole by not only correcting the physical damage to the automobile but by also paying for the diminution in value of the automobile. The Townsend court rejected this argument, finding that the words of the contract were clear and explicit and precluded coverage for diminished value claims. The court found that the policy language limited the insurer's obligation to the cost of physically restoring the vehicle to substantially the same condition it was in before the accident.
Because a first-party claim sounds in contract, we find the distinction between third-party and first-party claims to be significant. As such, we agree with Markel that the terms of the insurance agreement govern Campbell's entitlement to recovery. Rules applicable to recovery in *623 tort do not apply to an action on a contract of insurance. Thus, we do not consider what measure of recovery would make the insured whole after a loss. Because Campbell's suit is based on allegations of breach of contract, we focus on the language of the insurance policy and the ordinary meaning of the words defining the parties' obligations.

E. General Principles of Contract Interpretation
An insurance policy is an agreement between the parties and should be interpreted according to the general rules of contract interpretation as set forth in the Louisiana Civil Code. Ledbetter v. Concord Gen. Corp., 95-0809, p.3 (La.1/6/96), 665 So.2d 1166, 1169, decree amended, 95-0809 (La.4/18/96), 671 So.2d 915. When interpreting insurance contracts, the judicial responsibility is to determine the parties' common intent. Louisiana Ins. Guar. v. Interstate Fire, 93-0911, p. 5 (La.1/14/94); 630 So.2d 759, 763. The parties' intent, as reflected by the words of the policy, determines the extent of coverage. La. C.C. art.2045; Ledbetter v. Concord Gen. Corp., 665 So.2d at 1169. When the words of a contract are clear and explicit and lead to no absurd consequences, however, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La. C.C. art.2047; Ledbetter v. Concord Gen. Corp., 665 So.2d at 1169. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Id. Courts lack the authority to change or alter the terms of an insurance policy under the guise of interpretation. Louisiana Ins. Guar. v. Interstate Fire, 630 So.2d at 764.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., 93-1480, p. 3 (La.4/11/94), 634 So.2d 1180, 1183. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Id.

F. Interpretation of Markel's Policy
We agree that the insuring language of the policy covering "direct and accidental loss" is broad enough to encompass diminished value. Thus, the issue is not whether the insurance agreement is broad enough to cover the loss but whether the limitation of liability is broad enough to cap Markel's obligation to pay it.
Campbell initially attempts to persuade this court that the limitation of liability language should not be given effect when addressing the scope of coverage under the policy. Campbell argues the provision merely "affords an insurer the option of paying a lesser amount under certain circumstances" but cannot operate to exclude diminished value from coverage.
An insurance contract is the law between the parties, and every stipulation therein must be construed as written. Epps v. City of Baton Rouge, 604 So.2d 1336, 1349 (La.App. 1st Cir.1992). Insurers have the right to limit coverage in any manner desired, so long as the limitations are clearly and unambiguously set forth in the contract and are not in conflict with *624 statutory provisions or public policy. Benton Casing Service, Inc. v. Avemco Ins. Co., 379 So.2d 225, 227 (La.1979).
We find the limitation of liability clause at issue in this case is valid. It unambiguously and expressly limits the insurer's collision coverage liability to the lesser of the "actual cash value of the cycle at the time of loss" or the "amount required to repair or replace the cycle." This limitation of liability does not violate any statutory provisions or conflict with public policy. See Epps v. City of Baton Rouge, 604 So.2d at 1350. This language clearly provides Markel with the option to "repair" the cycle rather than replacing it or paying for its actual cash value when a loss occurs. Thus, we reason as the Townsend court did, 793 So.2d at 478, that resolution of this case hinges on whether the term "repair" encompasses Campbell's claim for diminished value.
The term "repair" must be given its generally prevailing meaning and be construed according to its common usage. La. C.C. art. 11; La. R.S. 1:3; Townsend v. State Farm Mutual Auto. Ins. Co., 34,901 (La.App.2d Cir.8/22/2001), 793 So.2d 473, 478. Black's Law Dictionary 1298 (6th ed.1990) defines "repair" as, "[t]o mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction." Webster's II New College Dictionary 939 (1995) defines "repair" as, "[t]o restore to sound condition after damage or injury: Fix." Our jurisprudence has also defined "repair" as, "to fix anything that is broken." See South Cent. Bell Telephone Co. v. Barthelemy, 94-0499, p. 20 (La.10/17/94), 643 So.2d 1240, 1250.
Markel submits that Louisiana courts have otherwise addressed the term "repair" in the context of an automobile collision policy and have interpreted it to mean "physical restoration," citing Dugas v. Insurance Co. of St. Louis, 134 So.2d 634, 638 (La.App. 4th Cir.1961) and Stutes v. Bankers Fire & Marine Ins. Co., 134 So.2d 136 (La.App. 3d Cir.1961). Also addressing other states' cases that have addressed first-party diminished value contract claims, Markel recognizes there is a split in the authorities. Of the cases ruling in favor of the insurer, Markel references a number of decisions wherein the courts have interpreted similar policy language and found that the "repair or replace" language did not obligate the insurer to pay for the vehicle's diminished value when the insurer has paid for the vehicle's physical restoration via a quality repair job. See General Accident Fire & Life Assur. Corp. v. Judd, 400 S.W.2d 685, 687 (Ky.App.1966) (finding that an insurance policy that limited liability to the amount it would cost to "repair or replace the property... with other of like kind and quality" did not require a restoration of value but only a restoration of physical condition, while recognizing that a car that has been wrecked may never be fully restored to its market value before the accident); Bickel v. Nationwide Mut. Ins. Co., 206 Va. 419, 143 S.E.2d 903, 906 (Va.1965), (stating that it "would be arbitrarily reading out of the policy the right of defendant to make repairs or replace the damaged part with materials of like kind and quality" to calculate the measure of damages as the difference in market value immediately before and after the collision); Ray v. Farmers Ins. Exch., 200 Cal.App.3d 1411, 246 Cal. Rptr. 593, 596 (3 Dist. 5/5/1988) (reasoning that to hold the insurer liable for diminution in value would make it "an insurer of the automobile's cash value in virtually all cases and would render essentially meaningless its clear right to elect to repair rather than to pay the actual cash value of the vehicle at the time of loss"); Johnson *625 v. State Farm Mut. Auto. Ins. Co., 157 Ariz. 1, 754 P.2d 330, 331 (App. Div. 2 2/29/99) (interpreting "repair or replace the property or part with like kind and quality", the court stated that "nowhere in the policy does there appear any language which requires [the insurer] either to restore the vehicle to its pre-accident condition or to pay the insured the difference in value after the accident as opposed to before").[4]
Conversely, Campbell argues that the term "repair" as used in the limitation of liability clause encompasses diminished value. Urging that the term "repair" should not be interpreted narrowly to only cover physical repairs, Campbell states that "repair" should contemplate making the insured whole. Alternatively, Campbell argues that the language of the insurance policy is ambiguous. Campbell relies on a number of other states' cases addressing first-party contract claims, wherein the courts have concluded that coverage for diminished value is required either because of the plain meaning of the policy language or based on a finding that the language is ambiguous.[5]
Among the cases that Campbell cites are: MFA Ins. Co. v. Citizens National Bank of Hope, 260 Ark. 849, 545 S.W.2d 70 (1977), (holding that if repairs to a fire-damaged vehicle with parts of like kind and quality would not restore the vehicle to its former market value, the proper measure of damages was the difference in market value before and after the loss where the policy limited liability to the "cost to repair or replace the property ... with other of like kind and quality, less depreciation"); Delledonne v. State Farm Mut. Auto. Ins. Co., 621 A.2d 350, 354 (Del.Super.Ct.1992) (finding that "an insurer's provision to `repair or replace' a vehicle or its parts with `like kind and quality' is ambiguous and requires that the insurer pay for diminution in value"); Venable v. Import Volkswagen, Inc., 214 Kan. 43, 519 P.2d 667, 672 (1974) (holding that when the insurer elects "to repair or replace the damaged ... part with other of like kind and quality, less depreciation," the insurer is obligated to put the automobile in "substantially the same condition it was prior to the collision so as to render it as valuable and serviceable as before" with the insured being compensated for any *626 deficiency in loss of actual value)[6]; Senter v. Tenn. Farmers Mut. Ins. Co., 702 S.W.2d 175, 178 (Tenn.Ct.App.1985) (finding that if the repairs after an accident restore function and appearance but not fair market value, the insured is entitled to recover the difference between the fair market value of the property immediately before the accident and immediately after all repairs have been completed); Nat'l Farmers Union Prop. and Cas. Co. v. Watson, 298 P.2d 762, 766-767, 1956 OK 161 (Okla.1956) (interpreting policy language that provided that the insurer's liability would "not exceed the actual cash value of the automobile ... nor what it would then cost to repair or replace the automobile ... with other of like kind and quality, with deduction for depreciation," the court held that unless the collision resulted in a total loss, the measure of recovery is the difference between the fair market value of the vehicle in the condition in which it was immediately prior to the collision and its value thereafter)[7]; and Campbell v. Calvert Fire Ins. Co., 234 S.C. 583, 109 S.E.2d 572, 577 (S.C.1959) (finding there has not been a "complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car" where the insurer's liability was limited to either the actual cash value of the automobile or what it would cost to "repair or replace the automobile... with other of like kind and quality....").[8]
In addition to the cases cited by the parties, our research reveals a number of recent cases from other states analyzing similar policy language. Those reaching the conclusion that there is no coverage for diminished value claims are: Siegle v. Progressive Consumers Ins. Co., 00-1503 (Fla. App. 4th Dist.6/13/2001), 788 So.2d 355 (finding no ambiguity and concluding there was no reading of the policy that obligated the insurer to pay for inherent diminution in market value where the insurer's liability was limited to the lesser of the actual cash value of the property or the "amount necessary to repair or replace the property with other of the like kind and quality;" this loss is simply not the type of damage that is subject to repair and, thus, is not a covered loss where the policy limits the insurer's liability to the amount necessary to repair the vehicle); Rezevskis v. Aries Ins. Co., XXXX-XXXX (Fla.App. 3 Dist. 3/14/2001), 784 So.2d 472, 474 (holding that the "repair or replace" limitation of liability capped the insurer's liability at the amount necessary to return the car to substantially the same condition as before the loss and did not include liability for loss due to stigma on resale); O'Brien v. Progressive Northern Ins. Co., XX-XX-XXX, XX-XX-XXX (Del.Super.Ct.12/18/2000); 2000 WL 33113833 *5 (holding that the "repair or replace" provision of the policy's limit of liability does not obligate the insurer to pay for the repaired vehicle's diminished value and distinguishing Delledonne v. State Farm Mut. Auto. Ins. Co. by drawing a distinction between automobiles with "`status as flood-damaged vehicles' and cars that have been repaired after collisions"); and Carlton v. Trinity Universal Ins. Co., XX-XX-XXXXX (Tex.App.-Hous. 14th Dist.11/16/2000), 32 S.W.3d 454, 464-465, review denied, (4/12/2001) (stating *627 there is no concept of "value" in the ordinary meaning of the word "repair" and holding that the "repair or replace" provision of the policy's limit of liability caps the insurer's liability at the cost of returning the damaged vehicle to substantially the same physical, operating, and mechanical condition as existed before the loss).
Still, other recent decisions have been favorable to the insureds. In Hyden v. Farmers Ins. Exch., 99-1731 (Colo. App.9/14/2000), 20 P.3d 1222, 1225, cert. denied, (4/16/2001), the court found coverage for diminished value, holding that when the insurer is obligated to "pay for the loss in money or ... repair or replace the automobile" with one "of like kind and quality," it must provide the insured "through repair, replacement, and/or compensation, the means of acquiring a vehicle substantially similar in function and value to that which the insured had prior to his or her accident." And in Cazabat v. Metropolitan Prop. and Cas. Ins. Co., 99-0544 (R.I.Super.4/24/2000), 2000 WL 1910089, the court denied the insurer's motion for summary judgment, finding that "an ambiguity exists as to whether or not `the cost of repair or replace the property with other of like kind and quality' includes damages for the inherent diminished value of an automobile resulting from the vehicle being in an accident."
After reviewing the above-cited cases, we are convinced that the better view of the "repair or replace" limitation is that it caps Markel's liability at the cost of returning the damaged cycle to substantially the same physical, mechanical, and cosmetic condition as existed before the loss. There is no concept of "value" in the ordinary meaning of the word "repair." To ascribe to the words "repair or replace" an obligation to compensate the insured for things that, by their very nature, cannot be "repaired" or "replaced" would violate the most fundamental rules of contract construction.
We do not accept Campbell's assertion that the policy language is ambiguous. We acknowledge that provisions in insurance contracts limiting liability are strictly construed against the insurer. See Ledbetter v. Concord Gen. Corp., 665 So.2d at 1169. But as the Supreme Court stated in Reynolds v. Select Properties, Ltd., 93-1480, pp. 4-5 (La.4/11/94), 634 So.2d 1180, 1183, quoting Muse v. Metropolitan Life Insurance Co., 193 La. 605, 192 So. 72 (1939):
The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties....
To interpret the word "repair" as encompassing the diminished value of an automobile would go beyond the word's plain meaning. To hold Markel liable for the cycle's diminished value would make it an insurer of the cycle's cash value in virtually all instances and would render meaningless its clear right to elect to repair rather than to pay the actual cash value of the cycle at the time of loss.
Under the terms of the policy, Markel does not agree to make its insureds whole. Likewise, it does not promise to pay for diminished value that results from a market psychology that a vehicle that has been damaged and repaired is worth less than a similar one that has never been damaged. Markel agreed to pay the actual cash value of property damaged by collision or to pay for its repair. We would be substantially *628 rewriting the terms of the insurance contract if we were to conclude that Markel must repair the cycle competently and properly and then also compensate the insured for any diminution in value. This insurance contract does not require a restoration of value. Thus, any diminished value resulting from damage not susceptible to repair or replacement does not fall within Markel's obligation under the policy.
While Campbell submits that the cases finding coverage for diminished value represent the nation's majority view, we recognize that of this group of cases, many involved policies providing that the automobile was to be repaired or replaced with property of "like kind and quality." In some instances, the courts have specifically interpreted this language as obligating the insurer to return the automobile to its preloss condition, including any diminution in value that occurs as a result of the accident. For example, in Hyden, the court concluded that the "like kind and quality" language obligated the insurer to provide the insured with the means of acquiring a vehicle that is substantially similar in function and value to that which the insured had prior to the accident. Hyden v. Farmers Ins. Exch., 20 P.3d 1222, 1225.
We do not necessarily agree with the Hyden court's conclusion that the "like kind and quality" language is broad enough to encompass an automobile's diminished value. But because the Campbell policy does not include this language, we need not reach this particular issue. We point out, however, that of the cases referred to by Campbell as representing the majority view, a number of those cases include the "like kind and quality language." Those cases are distinguishable from the present case since they involve different policy language.
Additionally, other cases cited by Campbell are distinguishable because they involved awards for diminished value that were based on damage that was repairable. The amount awarded actually represented an award for repairs that had not yet been performed or had been inadequately performed. See Barton v. Farmers Ins. Exch., 255 S.W.2d 451 (Mo.App. 1953); American Standard County Mutual Ins. v. Barbee, 262 S.W.2d 122 (Tex.Civ. App.1953); and Campbell v. Calvert Fire Ins. Co., 234 S.C. 583, 109 S.E.2d 572 (1959). According to the allegations of Campbell's petition, the present case involves a vehicle that has been fully and adequately repaired.
We conclude that the "repair or replace" limitation of liability language operates to cap Markel's liability at the cost of providing physical restoration of the cycle and that the policy does not provide coverage for claims for the cycle's diminished value. As such, we agree with the conclusion reached by the Townsend court that the insurer's obligation is satisfied once payment is made for the full and adequate physical repair of a damaged vehicle; the insurer is not required to pay for any reduction in the vehicle's market value. Accordingly, we find no merit in Campbell's contention that this coverage is not excluded because the policy does not contain an exclusionary clause addressing diminished value coverage. Since the limitation of liability clause operates to limit Markel's liability, it is inconsequential that the policy does not also expressly state that it does not afford coverage for diminished value claims. If we were to hold otherwise, we would fail to give effect to a valid limitation of liability clearly set forth in the policy.

III. CONCLUSION
For these reasons, we conclude the trial court erred in determining that Markel's *629 policy provides coverage for diminished value claims. Accordingly, we reverse that part of the judgment granting Campbell's cross-motion for summary judgment. Markel's application for supervisory review is granted and that part of the trial court's judgment denying Markel's motion for summary judgment is reversed. We also render judgment granting Markel's motion for summary judgment. Campbell is assessed with the costs of this appeal.
WRIT GRANTED AND MADE PEREMPTORY; TRIAL COURT JUDGMENT REVERSED; JUDGMENT RENDERED.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The order stated there was no just reason for delay and that the complications of class certification issues would be ameliorated if this court addressed the coverage decision.
[3] Campbell relies on Stone v. Commerical Fire & Cas. Co., 50 So.2d 327 (La.App. 1st Cir. 1951), as authority for the proposition that diminished value is a recoverable item of damages under an automobile collision policy. In Stone, the court interpreted a collision policy and determined that the plaintiff/insured was entitled to recover the "actual amount of damages sustained by his car in a wreck," minus a $100 deductible. Stone, 50 So.2d at 328. On appeal, the defendant/insurer challenged the trial court's award of $1050 to plaintiff, maintaining that if plaintiff had not traded in the wrecked vehicle, it could have had the vehicle repaired for the sum of $751.74. Thus, the defendant/insurer maintained its liability should be this lesser amount, minus the $100 deductible. On appeal, this court rejected defendant's argument that the vehicle could be restored to its original condition based on the low repair bid offered by the defendant. In dictum, this court cited Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, Section 3791, "Extent of Liability, Collision" for the proposition that a complete restoration of the property satisfying the intention of the policy could not be accomplished except where there is no diminution of value between the car as it was before the injury and as it is in its repaired condition. Stone, 50 So.2d at 329. In affirming the trial court's award of damages, this court found that the trial court had considered five repair bids and had likely based its award on one of the repair bids submitted by plaintiff that was found to be most reasonable, with the trial court making an adjustment for a repair item that was deemed unnecessary. Stone, 50 So.2d at 330. We conclude the Stone case does not support the proposition that an insured is entitled to recover damages for diminished value in addition to having his vehicle repaired under the terms of a collision policy.

Market refers the court to several trial court decisions, wherein the courts have addressed first-party claims and have ruled in favor of the insurer, concluding that the collision policies in question did not provide coverage for diminished value claims, citing Imelda Johnson, Individually and as a Representative of all persons Similarly Situated v. Illinois National Insurance Co., No. 463,112, Div. "H", 19th Judicial District Court, Parish of East Baton Rouge; Maurice Entremont, Individually and as a Representative of all Persons Similarly Situated v. American Central Insurance Company, No. 463,298, Div. "A", 19th Judicial District Court, Parish of East Baton Rouge; Noemi E. Antin, Trustee of the Antin Family Trust v. Mary A. Garcia, National Automotive Insurance Company, No. 1-9907-0039, Hammond City Court, Parish of Tangipahoa; and Bobby J. Graham, Sr., Patricia Diane Marcote, Individually and as Representatives of all Persons Similarly Situated v. Allstate Insurance Company, No. 86128, Div. "E", 21st Judicial District Court, Parish of Livingston.
[4] Additionally, Markel cites the following unpublished opinions reaching the same conclusion: Munoz v. Allstate Ins. Co., XXXX-XXXX (Pa.Commw. 1st Dist.11/15/1999), aff'd on appeal, 3475 EDA 1999, 761 A.2d 1244 (Pa.Super.7/3/2000) (Mem.Op.) (interpreting a policy that stated insurer's "liability will not exceed what it would cost to repair or replace the property ... with other of like kind and quality," the court found that the insured-claimant did not have a reasonable expectation that, beyond the cost of repairs to her car, she should receive something of value in return for her premium payment); and Roth v. Amica Mutual Ins. Co., 98-3551, 1999 WL 33510067 (Superior Court of Norfolk County, Mass. 9/3/1999) (finding policy language that limited the insurer's liability to the "cost to repair or replace the damaged property" as clearly and unambiguously providing the insurer with the right to elect to repair without incurring liability for diminution in market value due to the alleged stigma of the accident).
[5] Campbell also cites to an opinion of the Louisiana attorney general, 99 Op. Att'y. Gen. 183, which summarily concluded that diminished value claims, if established by the facts of the case, were recoverable by first-party claimants after repairs have been made to motor vehicles. Opinions of the attorney general are not law; they are not controlling on the courts and at most they are persuasive. Kidd v. Board of Trustees of Teachers' Retirement System of Louisiana, 294 So.2d 265, 269-270 (La.App. 1st Cir.), app. denied, 301 So.2d 46 (La.1974). We do not find this attorney general opinion to be persuasive because it does not address any particular policy language and the cases cited as authority do not involve first-party contract claims.
[6] We note that in this case, the repairs and workmanship were not performed satisfactorily.
[7] In this case, the parties disputed the extent of repairs for which the insurer was liable under the policy.
[8] This case involved a dispute as to whether the car was properly repaired and substantially restored to the same condition it was in prior to the collision.