665 So.2d 1166 (1996)
Lucy Wilinda LEDBETTER, et al.
v.
CONCORD GENERAL CORP., et al.
No. 95-C-0809.
Supreme Court of Louisiana.
January 6, 1996.
Rehearing Denied February 16, 1996.
*1167 Robert E. Bethard, Bethard & Davis; for Applicant.
Michael W. McKay, Hoffman, Sutterfield, Ensenat & Bankston; James H. Askew, Davidson, Nix, Arceneaux, Jones & Askew; for Respondent.
MARCUS, Justice[*].
On August 12, 1988, Lucy Wilinda Ledbetter checked into the Worth Motel in Coushatta, Louisiana with her six year old granddaughter, Jessica Veara. They went to bed about midnight, each sleeping in separate beds. Ms. Ledbetter was awakened when she felt a deep smothering sensation and discovered a man holding his hand over her *1168 mouth, instructing her to "do as I say or I'll hurt your daughter." The man was holding a tire tool in his hand, and indicated he had a knife and gun in his boot. After a struggle, the man raped Ms. Ledbetter. He then kidnapped Ms. Ledbetter by ordering her into her car. As they drove out of the motel parking lot, Ms. Ledbetter managed to jump out of the moving car, sustaining numerous bruises and gashes as a result. She subsequently contacted the police. She and the police returned to the motel room, where they found her granddaughter still asleep in her bed.
During their investigation, the officers found no sign of forced entry into the room. In a statement to the officers shortly after the incident, Ms. Ledbetter indicated that she recalled placing the chain lock on the door, but could not completely recall whether she activated the door knob lock. The officers experimented by trying to force the door open with the door knob locked, but were unable to do so. However, they found that once the door was unlocked and cracked opened slightly, the chain lock, which was improperly installed by the motel, could be easily lifted out of its slot and opened.
As a result of their investigation, police found that Mark McGraw fit the description of the rapist given by Ms. Ledbetter. He was subsequently convicted of aggravated rape and sentenced to life imprisonment. State v. McGraw, 564 So.2d 727 (La.App.2d Cir.), writ denied, 567 So.2d 1126 (La.1990).
Ms. Ledbetter, along with her son and daughter (as natural tutrix of Jessica Veara), filed suit against B.G. Patel and his wife, the owners of the motel, Classic Syndicate, Inc. (Classic), the insurer of the motel, Mark McGraw and Zaval Tex, McGraw's employer. Plaintiffs subsequently settled with Zaval Tex and it was dismissed from the lawsuit. Classic filed a motion for summary judgment on the ground that its policy did not provide coverage in this case because of its assault and battery exclusion. The trial judge denied the motion. Upon Classic's application, the court of appeal granted supervisory writs. The court granted a partial summary judgment and dismissed the claims against Classic for damages arising from the rape and kidnapping. However, the court remanded the case to the trial court for a determination of whether any damages resulted from the unauthorized entry, separate and apart from the assault and battery. 564 So.2d 732 (La.App.2d Cir.1990).
On remand, Classic again moved for summary judgment, contending that the evidence showed there was no genuine issue of material fact that plaintiffs suffered no damage from the wrongful entry. The trial judge denied summary judgment. Upon Classic's application, the court of appeal granted supervisory writs, reversed the trial court's ruling and granted Classic's motion for summary judgment, dismissing it as a party defendant to the lawsuit. 588 So.2d 115 (La. App.2d Cir.1991). Upon plaintiffs' application, this court granted writs, vacated the judgment of the court of appeal and denied the motion for summary judgment, finding there were genuine issues of material fact. The case was remanded to the trial court for further proceedings. 591 So.2d 704 (La. 1992).
On remand, a trial on the merits was held. At the conclusion of the trial, the trial judge rendered judgment against the Patels, d/b/a Worth Motel, assigning them 40% of the fault. He found that Classic provided coverage for the motel, and that the assault and battery exclusion in its policy did not apply. He assigned 35% fault to Ms. Ledbetter, assigned 25% fault to Zaval Tex, the employer of Mark McGraw, and held McGraw was solidarily liable for 100% of the damage to Ms. Ledbetter as a result of the intentional tort. Ms. Ledbetter's damages were fixed at $240,000.00, reduced by her percentage of fault and by the percentage of fault of Zaval Tex, with whom she had previously settled. The claims of Ms. Ledbetter's son and Jessica Veara were dismissed.
Both Classic and plaintiffs appealed. Concluding that the assault and battery exclusion applied, the court of appeal reversed the trial court's judgment against Classic. In all other respects, the judgment was affirmed.[1] Upon plaintiffs' application, we granted certiorari *1169 solely to consider whether the assault and battery exclusion in Classic's policy excludes coverage for Ms. Ledbetter's injuries (assignments of error numbers one and two).[2] It was not our intent to grant the application as to the remaining assignments of error (numbers three through seven); accordingly, we will recall and deny the writ as to these assignments.
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La.Civ. Code art. 2047; Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co., 93-0911 (La. 1/14/94); 630 So.2d 759, 763. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Pareti v. Sentry Indemnity Co., 536 So.2d 417, 420 (La.1988).
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). However, the rule of strict construction does not "authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 75 (1939). Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94); 634 So.2d 1180, 1183. With these principles in mind, we now turn to a review of the insurance policy.
Section I of the "Commercial General Liability Coverage Form" of the policy sets out three coverages: Coverage A applies to "bodily injury and property damage liability," Coverage B applies to "personal and advertising injury liability," and Coverage C applies to medical payments. In Section IV, "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at one time." "Personal injury" is defined in pertinent part as:
injury, other than "bodily injury," arising out of one or more of the following offenses:
c. Wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies; (emphasis added)
Finally, the assault and battery exclusion is set out in an endorsement to the policy:

ASSAULT & BATTERY EXCLUSION
Notwithstanding anything contained herein to the contrary, it is understood and agreed that this policy excludes claims arising out of Assault and Battery, whether caused by or at the instigation of, the insured, his employees, patrons, or any causes whatsoever.
Much of the discussion in this case in the lower courts has centered around whether Ms. Ledbetter sustained any damages solely from the wrongful entry into her motel room, separate and apart from the rape and kidnapping, apparently based on the interpretation that the policy specifically provides coverage for personal injury arising out of wrongful entry into a room. However, we believe such an interpretation ignores a fundamental distinction in the policy between "bodily injury" and "personal injury." For purposes of this policy, "personal injury" is injury other than "bodily injury." Damages which arise out of "bodily injury" include general damages, physical pain and suffering, mental anguish and distress and special damages. W. McKENZIE AND H. JOHNSON, LOUISIANA CIVIL LAW TREATISE: INSURANCE LAW AND PRACTICE, § 163. Ms. Ledbetter's damages fall within the scope of Coverage A "bodily injury" coverage. Therefore, it would be incorrect to fit these damages under Coverage *1170 B "personal injury" coverage, since that coverage, by definition, excludes "bodily injury."
Having concluded that Ms. Ledbetter's injuries would fall under Coverage A ("bodily injury") of the policy, we now turn to the central issue in this case, namely, whether the policy's assault and battery exclusion precludes coverage. Similar exclusions have been found unambiguous by our courts. Alvarado v. Doe, 613 So.2d 166 (La.App. 4th Cir.1992), writ denied, 614 So.2d 64 (La. 1993); Wallace v. Huber, 597 So.2d 1247 (La.App. 3rd Cir.1992); Williamson v. Kovac, 591 So.2d 788 (La.App. 5th Cir.1991). Nonetheless, Ms. Ledbetter argues that the exclusion is ambiguous under the facts of this case, since it is not clear whether a rape or a kidnapping is an "assault and battery."
Turning first to the question of rape, we recognize that under our criminal code, assault, battery and rape are separate and distinct crimes. However, we also recognize that the same act may constitute a violation of two distinct statutory provisions, although principles of double jeopardy may bar multiple convictions and sentences. State v. Dubaz, 468 So.2d 554 (La.1985). Therefore, the mere fact that McGraw's act may have been charged by the district attorney as rape does not mean, at least for civil purposes, that it could not be considered as an assault and battery.
This same conclusion has been reached by other courts which have interpreted assault and battery exclusions in the context of rape. In Paul v. Montesino, 535 So.2d 6, 7 (La. App. 4th Cir.1988), writ denied, 536 So.2d 1222 (La.1989), the court stated:
A rape necessarily requires the intentional use of force and/or violence upon the person of another. Although all batteries are not rapes, all rapes necessarily are batteries. The allegations of plaintiff's petition clearly show the physical contact and struggle associated with the incident. Even if penetration, a necessary element of rape, had not been accomplished, the allegations of the petition would still set forth an assault and battery. We find no ambiguity.
Likewise, in United National Ins. Co. v. Waterfront New York Realty Corp., 994 F.2d 105, 108 (2d Cir.1993), the court held:
It does not matter that the penal law lays down specific elements for the various offenses or degree of offenses that entail unwanted touching, or that the crime of rape, as compared to assault and battery, entails other or additional elements. In the civil context in which the insurance contract was made, the common meanings of "assault" and "battery" subsume all forms of tortious menacing and unwanted touching.
While it is true that ambiguities are often construed against insurers, a clause may be general without being ambiguous, and even a vague clause may be ambiguous only at its edges. It is neither possible nor desirable for an insurance contract to enumerate the various kinds and degrees of attacks encompassed by the assault and battery exclusion. The clause need not mention rape or strangulation or mayhem, or other greater or lesser invasions of the person; all are subsumed in the broad language employed.
See also United National Ins. Co. v. Entertainment Group, Inc., 945 F.2d 210 (7th Cir. 1991).
Based on this reasoning, we conclude that the assault and battery exclusion in Classic's policy is unambiguous as applied to rape. A clear and unambiguous provision in the insurance contract limiting liability must be given effect. Gunn v. Automotive Casualty Ins. Co., 614 So.2d 154 (La. App. 3rd Cir.1993); Foret v. Louisiana Farm Bureau Casualty Co., 582 So.2d 989 (La.App. 1st Cir.1991). Therefore, the court of appeal properly held that the assault and battery exclusion bars coverage by Classic for Ms. Ledbetter's injuries resulting from the rape.
However, turning to the kidnapping, we believe a different result must be reached. In contrast to rape, which necessarily involves a battery, a kidnapping does not necessarily involve the intentional use of force and/or violence upon the person of another.[3] *1171 Based on this reasoning, we find that the exclusion is ambiguous as applied to Ms. Ledbetter's damages arising from the kidnapping. Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). Therefore, we conclude that Classic's assault and battery exclusion does not exclude coverage for Ms. Ledbetter's damages resulting solely from the kidnapping. Although the trial court did not delineate which damages arose from the rape and which arose solely from the kidnapping, our review of the record indicates that approximately forty percent of Ms. Ledbetter's damages arose solely from the kidnapping. Accordingly, we hold that the insurer is liable for damages arising from the kidnapping in the amount of $96,000.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it holds that Classic's insurance policy excludes coverage for the damages of Ms. Ledbetter arising from the kidnapping. The judgment is amended to award judgment in favor of Ms. Ledbetter, and against Classic, in the sum of fifty-seven thousand and six hundred dollars ($57,600) together with legal interest thereon from date of judicial demand until paid (said amount being calculated by reducing Ms. Ledbetter's damages arising from the kidnapping by the percentage of her fault and the percentage of fault of Zaval Tex, with whom she previously compromised). Each party is to bear its own costs. As to the remaining assignments of error (numbers four through seven), the writ is recalled and denied.
JOHNSON, J., concurs in the result.
WATSON, J., concurs in part and dissents in part.
NORRIS, J., concurs in part, dissents in part and assigns reasons.
LEMMON, J., dissents in part, concurs in part and assigns reasons.
WATSON, Justice, concurring in part and dissenting in part.
The majority correctly concludes that kidnapping does not fall within the policy's assault and battery exception. Policy exclusions are strictly construed against the insurer. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180. Under a strict and narrow construction, a kidnapping is not an assault and battery. I concur with the majority on this point.
I disagree with the majority that rape is excluded. Contrary to the majority view, an ambiguity is not necessary. The question is a broad or narrow construction of the terms assault and battery. A rape necessarily includes an assault and battery, but the assault and battery are incidental to the rape injuries. Interpreting the policy according to ordinary understanding, a rape is not synonymous with an assault and battery.
The court granted the writ as to all issues including allocation of fault. I object to recalling the writ at least as to the 35% allocated by the lower courts to the offender's employer. No fault should be charged to the employer which had no duty to the plaintiff and whose negligence, if any, was not a cause in fact of plaintiff's damages. Employers should not be held responsible for their employees' criminal acts. Giving a job to a worker with a history of criminal activity should not result in civil liability.
For these reasons, I respectfully concur in part and dissent in part.
*1172 NORRIS, Justice Pro Tem., concurring in part and dissenting in part.
The Classic Syndicate General Liability Policy does not define the term "Assault and Battery." Undefined terms must be given their generally prevailing meaning. La.C.C. art. 2047. In my view, reasonable minds may differ over whether "Assault and Battery," in its generally prevailing sense, includes or excludes rape and kidnapping. Also, I am not convinced that if the entire criminal transaction includes an element that can be called assault or battery, then all resultant damages should be excluded. Cf. Breland v. Schilling, 550 So.2d 609 (La.1989). In short, the term is ambiguous as used in this exclusion clause. Thus it must be construed against the insurer and in favor of the insured with the objective of effecting the purpose of liability insurance, which is to afford the insured protection from damage claims. Reynolds v. Select Properties Inc., 93-1480 (La. 4/11/94), 634 So.2d 1180, and authorities therein. The proper interpretation in this case is that there is no exclusion for claims arising out of either rape or kidnapping. Great American Ins. Co. v. Gaspard, 608 So.2d 981 (La.1992).
I therefore concur with the majority insofar as it finds this policy ambiguous with respect to kidnapping and awards damages, but dissent insofar as it finds the policy unambiguous and denies coverage for the rape.
LEMMON, Justice, concurring in part and dissenting in part.
I concur in the majority's denying coverage for the claims arising out of the rape, but dissent from the majority's failure to apply the policy exclusion to claims arising out of the kidnapping.
The "assault & battery exclusion," added by endorsement to this comprehensive general liability policy issued to a motel operator, was clearly intended to exclude claims arising out of an attack on a motel patron by the motel operator or his employees, or by other patrons. Such an attack occurred in this case, and the motel operator was cast in judgment for the damages arising out of the attack because of his negligence in installing or failing to repair a defective lock. That liability would have been covered by the insurance policy but for the exclusion which was intended to exclude claims arising out of such an assaultive attack. I see no reason to differentiate between the claim for the rape in the assaultive attack and the claim for the kidnapping in the course of the same attack, both of which were accomplished by the intentional placing of the victim in reasonable apprehension of offensive contact and by the non-consensual contact.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in the vacancy created by the resignation of Dennis, J. Victory, J. (recused) not on panel. Rule IV, Part 2, § 3.
[1] 26,643 (La.App.2d Cir. 3/1/95); 651 So.2d 911.
[2] 95-0809 (La. 5/12/95); 654 So.2d 341.
[3] For example, aggravated kidnapping as defined in La.R.S. 14:44, provides:

Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of person.
While subsection (1) could involve a battery, it is clear that a kidnapping could be accomplished under subsection (2) or (3) without committing a battery.