h COOKS, Judge.
This is a dispute concerning the denial of benefits on an accident and health indemnity contract. The insurer appeals the trial court’s grant of summary judgment finding there was coverage. For the following reasons, we affirm.
FACTS
On June 24, 1995, Raymond Thibodeaux was seriously injured when he fell from a *110 ladder while washing a house. At the time of the injury, Raymond Thibodeaux had been employed by the City of Opelousas for eighteen years. Thibodeaux occasionally would wash houses to make some extra money. The record revealed Thibo-deaux earned anywhere from $300 to $1,000 annually washing houses. It was not connected to his work for the City of Opelousas.
After the accident, Thibodeaux sought payment of his medical bills through Louisiana Municipal Risk Management Agency (LMRMA), the health care benefits | ¡.provider for the City of Opelousas. LMRMA denied benefits based on an exclusion in the contract between it and the City of Opelousas. Both LMRMA and Thibodeaux filed motions for summary judgment grounded on the coverage issue. After a hearing and the submission of post-argument briefs, the trial court took the matter under advisement. Judgment was issued by the trial court denying LMRMA’s motion and granting Thibo-deaux’s motion finding the policy did not exclude coverage. This appeal followed.
ANALYSIS
The City of Opelousas provides health and accident indemnification to its employees and their dependants through an “Accident and Health Contract” maintained through LMRMA. The Accident and Health Contract contains an exclusion that provides:
Section VII. Exclusions and Limitations.
Coverage under this contract is subject to the following exclusions and limitations for which no benefits shall be paid:
* * *
5. Services for any occupational condition, sickness, or injury arising out of or in the course and scope of employment for wage or profit, or services which are furnished to a participant under the laws of the United States or any state or political subdivision thereof, or for services which the participant is entitled to benefits under any workers compensation or occupational disease law; for which the participant shall have no right under this contract, even though he elects to waive his right to such benefits or services.
In Ledbetter v. Concord General Corp., 95-809 (La.1/6/96); 665 So.2d 1166, the Louisiana Supreme Court addressed the interpretation of insurance policies. The court stated:
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The parties’ intent, as reflected by the | ¡¡words of the policy, determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. La. Civ. Code art. 2047; Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94); 630 So.2d 759, 763. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Pareti v. Sentry Indemnity Co., 536 So.2d 417, 420 (La.1988).
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). However, the rule of strict construction does not “authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.” Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 75 (1939). Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do *111 not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180, 1183.
Id. at pp. 3-4; 665 So.2d at 1169.
It was undisputed that in addition to his work for the City of Opelousas, Thibo-deaux, “on the side” during the summer months, washed houses to earn extra money. It was estimated that Thibodeaux earned between $300 and $1,000 per year by washing houses.
The trial court found, although the policy in question was “described as an accident and health contract, for all practical purposes, it is a health insurance policy.” We agree, and note regardless of its classification, it is still subject to the general rules of interpretation of contracts.
The trial court, after setting out the law as to interpretation of contracts, gave the following well-articulated reasons for denying the exclusion, which we adopt as our own:
If defendant is going to provide a “health plan” (health insurance policy) for City of Opelousas employees such as plaintiff herein, it must be clear and unambiguous. It is not. Furthermore, considering how essential health insurance is in our society, it is shocking to the conscious to deny health insurance coverage to a city employee who is trying to 14make a little extra money on the side with a part-time, self-employed summer job, without said employee having actual notice of the exclusion of coverage, if he is injured while doing any other side-line work. How would the employee know this until he is injured such as what occurred in the case at bar? This would qualify as an “absurd conclusion” as set forth in the LIGA v. Interstate Fire [630 So.2d 759 (La.1994) ] case supra.
Plaintiff in this case is an everyday hard-working “blue collar” employee serving the City of Opelousas. All along (for 18 years) he was led to believe and thought he had health insurance with the City. He gets hurt in an accident (“fall”) totally unrelated to his true occupation. He applies for benefits. Defendant locates and asserts an exclusion denying coverage in the accident and health contract. Plaintiff is “bare” and ruined financially. Plaintiff, like any other worker in that situation, was justified in thinking and believing he had health insurance coverage. Certainly, if plaintiff, at the time of his accident, was working as an employee for someone else, with other health insurance or workers compensation benefits available, that would be an entirely different story. That would be the situation which would justify and trigger such an exclusion. But that was not the case here. Plaintiff has nothing to fall back on. If the exclusion is inapplicable, at least the defendant would’ have subrogation rights under the contract against a negligent party other than its insured, if the insured gets hurt working part-time.
When considering the facts in this case, to uphold this exclusion, or make it applicable, would require that the plaintiff be given actual notice of said exclusion by having him sign a waiver of coverage if hurt while working in any part-time occupation or employment other than his principal business or occupation. This exclusion, which would expose every part-time or side-line worker to a non-coverage situation, would work an economic hardship on every such worker trying to make an extra buck. In that situation, no one could do any “odd” jobs (without running the risk of not having health insurance), without making sure there is worker’s compensation or available health insurance while doing said job and signing up for it. That would place an unreasonable burden on a person such as the plaintiff. Odd, side-line and/or part-time jobs are part of the fabric of the American workplace and do not squarely fall within said exclusion.
*112 When you consider the effect of applying the exclusion to working dependents, the financial effect on plaintiff is equally as problematic. For instance, suppose plaintiff had a 15-year-old daughter who would baby sit or teach swimming lessons to make a little extra spending money and would accidently get hurt while working through no fault of anybody else. That could be deemed “employment for wage or profit.” If so, and the exclusion would be upheld, then plaintiffs child would be unprotected, and the parents would be financially responsible for her medical expenses. That is precisely the protection plaintiff is seeking by having said health insurance. This exclusion is potentially disastrous.
|fiThe meager presence of an exclusion such as this in a health insurance contract, without any actual notice to or waiver signed by an employee, allows the plaintiff to be “ambushed” by the insurance provider. Plaintiff is “bare” and totally unprotected in this situation. The burden of prevention (i.e. notice or waiver) is greatly outweighed by the gravity of the harm (i.e. $75,000 in unpaid medical bills). If said exclusion is not deemed to be ambiguous and construed against the defendant in favor of health insurance coverage for the plaintiff, then said exclusion (without some notice or waiver of the risk involved) would be contra bonos mores, violate public policy and therefore be unenforceable. Either way, considering the precise set of facts surrounding plaintiffs injury, plaintiff should be afforded health insurance in this particular situation and the exclusion clarified. The exclusion, as written, is inapplicable to the set of facts in this case.
In addition, we find the part-time work Mr. Thibodeaux engaged in does not fall within the definition of “occupation.” Black’s Law Dictionary, Fifth Edition (1979), defines “occupation:”
That which principally takes up one’s time, thought and energies; especially one’s regular business or employment; also, whatever one follows as the means of making a livelihood. Particularly business, profession, trade or calling which engages individual’s time and efforts; employment in which one regularly engages or vocation of his life.
The record revealed Mr. Thibodeaux, when injured, was involved in an endeavor that earned him somewhere between $300.00 and $1,000.00 annually. This activity, we find, was not one which principally “took up” his time, thought and energies nor one in which he regularly engaged as a vocation of his life or from which he earned income sufficient to thrive or meaningfully improve his livelihood.
The jurisprudence cited by defendants is distinguishable from the present case. In Pinell v. Patterson, 491 So.2d 637 (La.1986), an employee attempted to file a claim under his employer’s group accident and sickness policy despite the injury having occurred during his employment on a drilling rig. The exclusion in the policy was upheld because worker’s compensation was available through his employment on the drilling rig.
In Natchitoches Parish Hosp. Service Dist. v. Rachal, 94-995 (La.App. 3 Cir. 2/1/95); 649 So.2d 1152, writ denied, 95-528 (La.4/7/95); 652 So.2d 1349, the plaintiff sustained injuries when a tractor trailer rig driven by him was struck by a train. Plaintiff, as the spouse of an employee of Natchitoches Parish Hospital, filed claims for coverage under the Hospital’s insurance plan. The Hospital filed a motion for summary judgment contending plaintiff was acting within the course and scope of his employment at the time of the accident and thus his claim was subject to an exclusion contained in the health insurance policy which exempted from coverage medical expenses resulting from sickness or injury arising out of or in the course of employment. Plaintiff did not appear or present any evidence at the motion for summary *113 judgment, and the trial court granted the Hospital’s motion for summary judgment. This court affirmed, finding the insurer’s evidence that the insured was acting within the scope of employment at the time of the accident supported summary judgment. This case is not applicable to the present case, because alternative benefits were available to the plaintiff through his employment.
Defendants also cite cases from other jurisdictions. After a review of these cases we find them unpersuasive. The trial judge properly granted Mr. Thibo-deaux’s motion for summary judgment finding the accident and health policy issued by LMRMA provided coverage.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant, Louisiana Municipal Risk Management Agency.
AFFIRMED.