948 So.2d 1113 (2006)
Shellie ROLSTON
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Insurance Company, City of New Orleans and Sheila Lowery
Shellie Rolston
v.
United Services Automobile Association, State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Insurance Company, City of New Orleans and Sheila Lowery.
Nos. 2006-CA-0978, 2006-CA-0414.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 2006.
*1114 Darla L. D'Amico, Frank J. D'Amico, Sr., Frank J. D'Amico, Sr., APLC, Slidell, LA, for Plaintiff/Appellee.
C. Gordon Johnson, Jr., Nicholas C. Gristina, Porteous, Hainkel & Johnson, LLP, New Orleans, LA, for Defendant/Appellant, State Farm Fire and Casualty Insurance.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III and Judge MICHAEL E. KIRBY).
JOAN BERNARD ARMSTRONG, Chief Judge.
This is a consolidated appeal and writ application[1] in which the defendant, State *1115 Farm Fire and Casualty Company (State Farm) seeks review of the trial court's judgment of March 15, 2006 granting the plaintiff's motion for a declaratory judgment or, alternatively, for summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
This litigation arises out of a motor vehicle accident that occurred on August 1, 1999 involving a vehicle operated by the defendant, Sheila Lowery, and a vehicle operated by William Rolston. Shellie Rolston, the plaintiff herein, was a guest passenger in the Rolston vehicle and claims to have sustained damages in the accident.[2]
It is undisputed that State Farm issued a Personal Liability Umbrella Policy (PLUP) to its named insured, Dr. William Rolston, that was in full force and effect on the date of the accident. It is also undisputed that the plaintiff, Shellie Rolston, was William Rolston's wife at all times pertinent to this litigation.
It is also undisputed that the State Farm policy in question contained the following exclusion:
We will not provide insurance:
* * *
10. for personal injury to the named insured, spouse, or anyone within the meaning of part a. or b. of the definition of insured.
"Insured" is defined in the policy, parts 5(a) and 5(b) as follows:
In this policy, "you" and "your" refer to the "insured", as defined. "We", "us" and "our" refer to the Company listed in the Declarations. The following definitions are important:
* * *
5. "Insured" means:
a. the named insured
b. the following residents of the named insured's household:
(1) the named insured's relatives; and
(2) anyone under the age of 21 under the care of a person named above;
State Farm contends that this exclusion precludes Shellie Rolston from maintaining a claim under the PLUP.
State Farm originally sought summary judgment in April of 2001, asserting the exclusion. The trial court denied State Farm's motion, and this Court denied supervisory writs on October 4, 2001 in 2001-C-1020, finding no error in the trial court's ruling.[3] That judgment is now the law of the case, making the parties' arguments concerning retroactive application of the statute to an umbrella liability policy moot with respect to the case at bar.
State Farm relied on the decision of the Louisiana Court of Appeal, Second Circuit, upholding an identical exclusion in a wrongful death case, Walker v. State Farm Mut. Auto. Ins., 37,063 (La.App. 2 Cir. 6/25/03), 850 So.2d 882, writ denied, 2003-2019 *1116 (La.12/19/03), 861 So.2d 574 and 2003-2117 (La.12/19/03), 861 So.2d 575; writ not considered, 2003-2113 (La.12/19/03), 861 So.2d 575; reconsideration granted, writ denied, 2003-2113 (La.3/12/04), 869 So.2d 804, reconsideration denied, 2003-2117 (La.3/12/04), 869 So.2d 806. In that case, as in the case at bar, the accident occurred prior to the legislature's enactment of La.R.S. 22:622.2, which provides:
No motor vehicle liability insurance policy nor any uninsured motorist coverage for bodily injury shall limit the coverage of, or the amount that can be recovered by, the named insured, or the spouse or other family member of the named insured, for whom the policy provides coverage, to any amount less than the highest policy limit provided in the policy for the respective coverage or potential recovery. Any recovery is limited to damages actually sustained. Any provision of a motor vehicle insurance policy issued in, or for delivery in, the state of Louisiana that is not in accord with this Section is contrary to the public policy of this state and shall be null, void, and unenforceable.
The plaintiff filed her own Motion for Declaratory Judgment, or, alternatively, for Summary Judgment, seeking a judicial determination that State Farm provided coverage for her alleged damages under the PLUP. On June 17, 2005, the trial court denied that motion. In response to the plaintiff's Motion to Amend or Clarify Judgment and/or Motion for a New Trial, the trial court by judgment dated March 15, 2006 reversed itself, granting the plaintiff's original Motion for Declaratory Judgment and/or Motion for Summary Judgment. The trial court granted State Farm's motion to certify the judgment as final and appealable by order dated April 17, 2006.
State Farm contends that the exclusion contained in the PLUP should be given effect as it expresses the common intent of the parties to the insurance contract.
The Louisiana Supreme Court set out the general legal principles that govern interpretation of insurance contracts in Peterson v. Schimek, 98-1712, pp. 4-5 (La.3/2/99), 729 So.2d 1024, 1028-29:
An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship. La.Civ.Code art.1983. As such, courts are guided by certain principles of construction and should interpret insurance policies the same way they do other contracts by using the general rules of contract interpretation as set forth in our Civil Code. Ledbetter v. Concord Gen. Corp., 95-0809 (La.1/6/96); 665 So.2d 1166, 1169; Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736. The purpose of liability insurance is to afford the insured protection from damage claims. Insurance contracts, therefore, should be interpreted to effect, not deny, coverage. Yount v. Maisano, 627 So.2d 148 (La.1993). The extent of coverage is determined from the intent of the parties as reflected by the words of the insurance policy. Ledbetter, 665 So.2d at 1169. The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the insured and insurer as reflected by the words in the policy. La.Civ.Code art. 2045; Ledbetter, 665 So.2d at 1169. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent. La.Civ.Code art. 2046; Central La. Elec. Co. v. Westinghouse *1117 Elec. Corp., 579 So.2d 981, 985 (La.1991).
Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. La.Civ. Code art.2047; Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991). Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d at 764. An insurance contract is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given meaning. One portion of the policy should not be construed separately at the expense of disregarding other provisions. La.Civ.Code art.2050; Central La. Elec. Co., 579 So.2d at 985. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. Valentine v. Bonneville Ins. Co., 96-1382 (La.3/17/97), 691 So.2d 665; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. Ledbetter, 665 So.2d at 1169; Reynolds, 634 So.2d at 1183. If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who furnished the policy's text and in favor of the insured finding coverage. La.Civ.Code art.2056; Crabtree, 632 So.2d at 741.
On our de novo review of this summary judgment, we are called upon to find whether on the record before us, the plaintiff is entitled to a finding, as a matter of law, that the exclusion contained in the PLUP is invalid and/or unenforceable against State Farm's insured, Dr. Rolston, applying the foregoing legal principles in the context of the standard for summary judgment. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions such as this. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2).
*1118 In the case at bar, Dr. Rolston claims that he asked his State Farm agent to provide umbrella or excess coverage under the same terms as his underlying insurance. In support of this contention, the plaintiff submitted Dr. Rolston's sworn affidavit dated March 24, 2001. In that document, Dr. Rolston averred that he was insured under a policy of Automobile Liability Insurance issued by State Farm Automobile Insurance Company with limits of $100,000 per person and $300,000 per accident, and that this policy had been in effect for years before the accident in question. Prior to August 1, 1999, Dr. Rolston told his State Farm agent that he would like to increase the monetary coverage limits, and was advised that he would need to purchase a personal liability umbrella policy. Dr. Rolston followed this advice and purchased the PLUP at issue in this case, which policy was in effect on August 1, 1999. Dr. Rolston averred that during the time the underlying policy was in effect, he always believed that claims by any person, including his wife, who might be injured in an accident through his fault would be covered. The copy of the underlying policy attached to Dr. Rolston's affidavit does not contain a household resident exclusion.
Dr. Rolston averred in his affidavit that when he purchased the PLUP, it was represented to him by the State Farm agent that the umbrella policy was increasing the limits of automobile and uninsured motorist liability and he always believed that this policy would cover claims by any person, including his wife, who might be injured through his fault. According to his affidavit, Dr. Rolston was seeking to provide increased limits of insurance coverage for his family and himself, and was not trying to decrease any policy premium amounts by excluding coverage for injury to himself, his wife and his children. He averred that he was not offered an option to elect a policy without the household resident exclusion. He was not informed that the PLUP contained exclusions not found in his underlying policy, and that these exclusions could leave him without coverage under the PLUP should his wife or children be injured through his fault. Furthermore, he did not sign any written agreements excluding members of his household from either policy. Furthermore, he and his wife were residing in separate households at the time of the accident.
Dr. Rolston's argument may be characterized as a claim that his consent to the PLUP, an act under private signature, was vitiated by error or mistake, insofar as he believed that since he had requested the same coverage as that provided by the underlying insurance policy, but in an increased amount for which he was paying an additional premium, the PLUP would contain the same effective exclusions as those contained in the underlying policy, and no others.
State Farm contends that Dr. Rolston's affidavit is inadmissible parol evidence.
State Farm correctly points out that, as a general rule, extrinsic evidence may not be admitted to negate or vary the contents of a written contract. If the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Patterson v. City of New Orleans, 96-0367, 96-0843, p. 5 (La.App. 4 Cir. 12/18/96), 686 So.2d 87, 90.
Our initial inquiry is whether the language of the PLUP is ambiguous. We find no ambiguity within the four corners of the document. However, that does not end our inquiry. In the instant case, Dr. *1119 Rolston's affidavit was not offered technically to vary the terms of the contract or to interpret an ambiguous provision. The affidavit was offered to support the insured's claim of error or mistake in the confection of the PLUP contract and to show that the plaintiff was not resident in Dr. Rolston's household at the time of the accident. Where there is error, mistake or fraud, parol evidence may be offered to determine the intent of the parties. La. C.C. art. 1848.[4] Furthermore, parol evidence is appropriate, as in the Sieferman case, where a party raises a factual issue as to the applicability of a contract provision.
The issue of error or mistake having been shown by Dr. Rolston's affidavit, the burden of proof on the motion for summary judgment shifted to State Farm to offer verified evidence that:
(1) Dr. Rolston was aware that his request for increased monetary coverage on the same terms as that provided by his underlying insurance policy had not been honored in the policy State Farm presented through its agent; and
(2) Dr. Rolston understood that while the monetary limits of the underlying policy were increased by the PLUP, the PLUP contained exclusions that had not been a part of the underlying policy.
In support of its Motion for Summary Judgment filed on December 22, 2000, State Farm provided as exhibits the plaintiff's responses to interrogatories in which she lists her marital status as "separated", and a certified copy of the PLUP. In support of its Motion for Partial Summary Judgment filed on April 28, 2004, State Farm offered page seven of the plaintiff's deposition testimony in which she testified that she was married to, but separated from, Dr. Rolston. Because the record contains no other evidence to support State Farm's position as to any of these issues, we cannot say that the trial court erred in granting the plaintiff's motion for summary judgment.
In light of this Court's denial of State Farm's writ application putting at issue the trial court's previous ruling denying State Farm's Motion for Summary Judgment and retroactively applying La. R.S. 22:622.2, the law of the case principle requires us to conclude that the household resident exclusion in this particular policy violates the statute and is unenforceable. Because of that principle and the fact that the record is clear and the evidence uncontroverted that error and mistake vitiated Dr. Rolston's consent to the household resident exclusion, it is not necessary to address the public policy issue and the question raised by State Farm as to the applicability of the statute to a personal umbrella policy.
For the forgoing reasons, we affirm the judgment of the trial court granting the plaintiff's Motion for Summary Judgment as to coverage. We remand for further proceedings consistent with this opinion and with the previous orders rendered in this case.
AFFIRMED.
NOTES
[1] Writ application 2006-C-0414 was consolidated with this appeal by order of this Court dated August 15, 2006.
[2] The plaintiff has settled her claims against the defendants, William A. Rolston, III and State Farm Insurance Company and dismissed her suit against those defendants by order dated February 4, 2004. She has settled her claims against the defendants James Q. Perkins, Sheila Lowery and United Services Automobile Association, and dismissed her suit against those defendants with prejudice by judgment dated November 8, 2004. The plaintiff reserved her rights to proceed against State Farm, Mississippi Farm Bureau Casualty Insurance Company, the City of New Orleans and William Rolston.
[3] In his Reasons for Judgment, the trial court applied the prohibition of this exclusion provided by La.R.S. 22:622.2 to the PLUP and applied the statute retroactively as being interpretive of existing law and the existing policies of this state regarding insurance coverage.
[4] See also Sieferman v. State Farm Mut. Auto Ins., 2000-71, pp. 6-7 (La.App. 3 Cir. 5/3/00), 760 So.2d 549, 553, where plaintiff filed a motion for summary judgment as to coverage under a State Farm policy. Affidavits offered by State Farm were allowed to raise an issue of material fact as to whether or not the death provision of an insurance policy was in force as to the insured at the time of his death. In that case, the appellate court reversed the summary judgment, holding that the affidavits should have been admitted and created a genuine issue of material fact as to whether a provision of the policy had been cancelled.