PETTIGREW, J.
12This is an action for personal injuries sustained by a minor child who accidentally ingested prescription medication during the time he was placed in the custody of foster parents by the State of Louisiana. The foster parents’ homeowner’s insurer was dismissed through summary judgment on the ground that the homeowner’s policy did not provide coverage for such claims. From this judgment, the minor child has appealed. We hereby affirm the trial courts grant of summary judgment.
FACTS
In early 2009, Jason Schafer, Jr. (“Jason”) was in the care and custody of his foster parents, Wayne E. Summers, Jr.[1] and Sheri S. Summers[2], pursuant to a Foster Parent Agreement with the Louisiana Department of Social Services (“Department”). At that time, Jason was approximately eighteen months old, and had been in the custody of Mr. and Mrs. Summers since October 3, 2008. Earlier, Jason and his three siblings had been removed from the custody of their biological parents and placed in different foster homes pursuant to an order of the court dated October 2, 2008.[3]
On January 31, 2009, Jason ingested prescription pain medication, believed to be possibly Oxycodone or Effexor, which purportedly fell out of a pocket of Mr. Summers’ pants, after he left them on the floor of a closet at his home. Shortly after ingesting said drugs, Jason became unconscious, experienced difficulty breathing, and even ceased breathing at one point. Jason was rushed by ambulance to Our Lady of the Lake Regional Medical Center in Baton Rouge, where it was initially determined that his condition was the result *221 of Oxycodone ingestion. It was later determined that Jason exhibited signs of having ingested Effexor. The opiates contained in the pain medication ingested by Jason ^caused his respiratory system to fail, and the resulting loss of oxygen to his brain (estimated to have been seventeen minutes) caused Jason to have brain hypoxia.
Jason’s biological parents, Constance and Jason Schafer, Sr., were notified of the accident and arrived at the hospital shortly thereafter. Jason was placed in the Intensive Care Unit and eventually transferred to Children’s Hospital in New Orleans. As a result of this incident, Jason suffered irreparable brain damage. By orders of the court, Jason was returned to the care of his biological parents on April 23, 2009.[4]
ACTION OF THE TRIAL COURT
On September 3, 2009, Constance and Jason Schafer, Sr., individually, and on behalf of their minor son, Jason, filed the instant litigation against Mr. and Mrs. Summers for the injuries Jason sustained while in their custody. Mr. and Mrs. Schafer also asserted a claim for their own emotional distress and mental anguish as a result of having witnessed their infant son’s injuries.
Mr. and Mrs. Schafer subsequently filed a First Amending Petition for Damages on December 3, 2009, wherein they added ANPAC Louisiana Insurance Company (“ANPAC”), the homeowner’s insurer of Mr. and Mrs. Summers, as an additional defendant in this matter. Mr. and Mrs. Schafer alleged that as the Summers’ homeowner’s insurer, ANPAC was liable for all damages sustained in the incident Later, on January 28, 2010, Mr. and Mrs. Schafer filed a Second Amending Petition for Damages wherein they named the State of Louisiana (“State”) as an additional defendant. Mr. and Mrs. Schafer alleged that the State, through the Department, had agreed to indemnify Mr. and Mrs. Summers pursuant to the Foster Parent Agreement.
On February 10, 2010, ANPAC filed an answer and also asserted a reconventional demand and a cross-claim seeking a declaratory judgment regarding the lack of coverage available under the ANPAC policy-
In accordance with La.Code Civ. Pro. art. 683(D), Mr. and Mrs. Schafer petitioned the court on September 14, 2010, seeking the appointment of attorney Laurie Kadair RRedman to serve as the legal tutrix for Jason. Ms. Redman was previously appointed to serve as the trustee in charge of a Special Needs Trust that was established for the sole benefit of Jason.
Mr. and Mrs. Schafer settled their claims against Mr. and Mrs. Summers and the State, and reserved only their right to. proceed against Mr. and Mrs. Summers as insureds under the ANPAC homeowner’s policy. By motion and order filed by Mr. and Mrs. Schafer, and signed by the court on October 18, 2010, Mr. and Mrs. Schafer “individually and as previously on behalf of the minor child” Jason, dismissed with prejudice, their individual claims and the claims they had previously asserted on Jason’s behalf. Mr. and Mrs. Schafer expressly reserved therein the rights of all other parties.
On September 2, 2011, ANPAC moved for summary judgment on the issue of whether the provisions of the homeowner’s policy issued to Mr. and Mrs. Summers extended coverage to Jason or whether, as ANPAC claimed, Jason was an insured *222 under the terms of the policy, which specifically excluded claims for bodily injury to an insured.[5] Following oral argument, the trial court granted ANPAC’s Motion for Summary Judgment in its entirety. Said judgment dismissed all claims of plaintiffs, Mr. and Mrs. Schafer, individually, and on behalf of their minor son, Jason, with prejudice.[6] From this judgment, Jason,[7] has appealed.
I,.ASSIGNMENT OF ERROR ON APPEAL
The sole error assigned by Jason in connection with this appeal is whether the trial, court erred in finding that he, as a foster child, was a member of the Summers’ household, and therefore, excluded from coverage under the ANPAC insurance policy.
STANDARD OF REVIEW
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Co-op., Inc., 2001-2956, p. 3 (La.App. 1 Cir. 12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. Pro. art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. Pro. art. 966(A)(2); Thomas v. Fina Oil and Chemical Co., 2002-0338, pp. 4-5 (La.App. 1 Cir. 2/14/03), 845 So.2d 498, 501-502.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim action or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be *223 able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. Pro. art. 966(C)(2); Robles v. ExxonMobile, 2002-0854, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341.
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and | fiwhether the mover is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 2002-2482, p. 3 (La. App. 1 Cir. 11/19/03), 868 So.2d 96, 97, writ denied, 2003-3439 (La.2/20/04), 866 So.2d 830.
DISCUSSION
In his single assignment of error, Jason argues that the trial court erred in granting ANPAC’s motion for summary judgment on the grounds that he was an “insured” under the homeowner’s policy that ANPAC issued to his foster parents, Mr. and Mrs. Summers. Jason asserts that questions of fact remain as to whether he, as a foster child, can be considered a resident of his foster parents’ household and as such, be considered an “insured” under the ANPAC policy.
A certified copy of the ANPAC Louisiana Special Homeowner’s Policy No. 17-X-791-79A-0, Form SH-3.17(l-03), issued to Mr. and Mrs. Summers was attached to ANPAC’s motion for summary judgment as Exhibit “A.” Said policy provides, in pertinent part, as follows:
DEFINITIONS
Throughout this policy, “you” and “your” refer to the “named insured” shown in the Declarations and the spouse if a resident of the same household, and “we,” “us,” and “our” refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:
⅜ ⅜ ⅝ ⅜ ⅜ ⅝
6. “insured” means you and the following residents of your household:
a. your relatives;
b. any other person under the age of 21 who is in the care of any person named above, [underscoring supplied]
⅜ ⅜ ⅜ ⅜ ⅜ ⅜:
SECTION II — EXCLUSIONS
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
2. Coverage E — Personal Liability does not apply to:
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
f. bodily injury to you and any insured within the meaning of part a. or b. of Definition 6. “insured”;
|7The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. Johnson v. Allstate Insurance Company, 95-1953 (La.App. 1 Cir. 5/10/96), 673 So.2d 345, 347, writ denied, 96-1292 (La.6/28/96), 675 So.2d 1126. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002, 1010.
It is well settled that an insurance policy is an agreement between the parties and should be construed according to the general rules of interpretation of contracts as set forth in the Louisiana *224 Civil Code. Cadwallader v. Allstate Insurance Company, 02-1637 (La.6/27/03), 848 So.2d 577, 580. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. Civ.Code art. 2046. Such intent is to be determined in accordance with the general, ordinary, plain, and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. Ledbetter v. Concord General Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, 1169, decree amended, 95-0809 (La.4/18/96), 671 So.2d 915; see La. Civ. Code art. 2047. If the policy at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Ledbetter, 665 So.2d at 1169. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions on the policy obligations they contractually assume. Campbell v. Markel American Insurance Company, 00-1448 (La.App. 1 Cir. 9/21/01), 822 So.2d 617, 623, writ denied. 01-2813 (La.1/4/02), 805|sSo.2d 204. In an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage. Tunstall v. Stierwald, 01-1765 (La.2/26/02), 809 So.2d 916, 921. However, the insurer bears the burden of proving policy limits or exclusions. Id.
The primary argument advanced by Jason in connection with his appeal in this matter is that the trial court erred in concluding that foster children are, as a matter of law, considered to be members of the household in which they are temporarily living. Jason emphasizes that his living arrangement with Mr. and Mrs. Summers was temporary and only until such time as the district court determined whether he and his siblings should be returned to their biological parents.
In support of its motion for summary judgment, ANPAC cites and relies upon the case of Jenks v. State, 507 So.2d 877 (La.App. 4 Cir.1987), writ denied, 513 So.2d 294 (La.1987), which addressed circumstances almost identical to those presented in the instant case. In Jenks, a 15-month old child in foster care was determined by the fourth circuit to have been a “resident” of his foster parents’ household, and thereby an “insured” under an identical provision of a homeowner’s policy issued to his foster parents prior to his placement in the home. The fourth circuit further concluded that due to the child’s status as an insured, the bodily injury he sustained was expressly excluded from coverage under the terms of his foster parents’ homeowner’s policy.
The fourth circuit in Jenks, held, in pertinent part:
This court has held that the phrase “residents of the named insured’s household” is not ambiguous as applied to particular situations (e.g. a child’s residency in his mother’s household). Schoemann v. Skate Country, Inc., 459 So.2d 743 (La.App. 4 Cir.1984). We do not find this policy’s language ambiguous under these circumstances. Henry was residing with the Dardens as a foster child. He had been living under the same roof for many months and would have continued to live with them for an indefinite period of time had the tragic injury not occurred. Henry was placed in the home in order that the Dardens could supply a parental and family relationship.
*225 The policy’s exclusion is clear and unambiguous. The only possible ambiguity occurs in the definition of insured in the inclusionary language of the policy. Even if the phrase is considered ambiguous, the ambiguity would generally be resolved in favor of coverage. In this instance if the child is covered under the policy, as a result of the exclusion of the bodily |9injury of an insured, recovery under the homeowner’s policy must be denied,
Jenks, 507 So.2d at 880.
The court in Jenks further noted that the extension of insured status to a foster child living in the home can be a double-edged sword. In one Instance, the policy’s exclusion for bodily injuries to an insured would operate to deny coverage for injuries such as those sustained by the foster child in the instant case, while on the other hand, coverage would be extended to cover any tortious acts committed by the foster child.
We find that under the specific policy language at issue and the facts of this case, Jason was a resident of the Summers’ household and in the care of ANPACs insureds. As such, Jason must be considered an insured and his bodily injury is expressly excluded from coverage under the ANPAC homeowner’s policy. Accordingly, the trial court correctly granted summary judgment in favor of ANPAC.
DECREE
For these reasons, we affirm the trial court’s judgment dismissing all Jason’s claims against defendant-appellee, ANPAC Louisiana Insurance Company. Appeal costs are assessed against plaintiff-appellant, Jason Schafer, Jr.
AFFIRMED.

. The foster father of the minor, Jason Schafer, Jr., is referred to herein as "Wesley Edward Summers” or "Wayne E. Sommers”; however, it appears that the proper name of said defendant is Wayne E. Summers, Jr.

. The foster mother of the minor, Jason Schafer, Jr., is repeatedly referred to herein as “Cheri Summers”; however, it appears that the proper name of said defendant is Sheri S. Summers.

.Although representations were made that Jason and his siblings were removed from his biological parents’ custody by a court order dated December 4, 2008, a review of the . record reveals that Jason was actually removed from their custody on October 2, 2008.

. Pursuant to an August 17, 2010 court order, the Schafer children, including Jason, were once again placed in the legal custody of the Department.

. In connection with its Motion for Summary Judgment, ANPAC also sought dismissal of Mr. and Mrs. Schafer's claims for "emotional distress” and "mental anguish” on the grounds that the definition of "bodily injury” contained in the homeowner’s policy issued to Mr. and Mrs. Summers expressly excludes coverage for such claims. This issue is moot in view of the fact that Mr. and Mrs. Schafer had previously dismissed their individual claims with prejudice a year earlier.

. Despite the trial court’s appointment on September 15, 2010, of Laurie Kadair Red-man as Jason’s legal tutrix, and the trial court’s subsequent October 18, 2010 order dismissing with prejudice the individual claims of Mr. and Mrs. Schafer, the trial court’s judgment inexplicably reflects counsel as representing "plaintiffs, [Mrs. Schafer] and [Mr. Schafer], individually and on behalf of their son [Jason].” Additionally, the judgment dismissed "all claims of plaintiffs against [ANPAC] with prejudice.” Pursuant to La.Code Civ. Pro. art. 683(D), Ms. Redman, in her capacity as Jason's legal tutrix, is the proper plaintiff to sue to enforce a right of an unemancipated minor.

.Although Ms. Redman is the proper party to pursue Jason’s legal rights, the trial judge who appointed her signed an order granting Jason's motion for appeal. Said order was submitted to the court by the attorney who earlier represented Jason’s biological parents on his behalf. Because ANPAC did not raise a dilatory exception objecting to Jason’s lack of procedural capacity, see La.Code Civ. Pro. art. 926(A)(6), it was waived. See La.Code Civ. Pro. art. 928(A); Nicosia v. Guillory, 322 So.2d 129, 131-32 (La.1975).